DREW, J.
|! Jeremy Jermaine Brooks was indicted for the first degree murder of 15-year-old Terrell Savore. An amended bill later charged him with second degree murder. At the time of the homicide at issue, the defendant was less than four months shy of his 18th birthday. He was convicted as charged by a jury and sentenced to the mandatory term of life imprisonment without benefit of probation, parole or suspension of sentence.
We have dealt with this case before. We previously affirmed the defendant’s conviction but vacated his sentence, remanding for resentencing in light of the Supreme Court’s decision in Miller v. Alabama, —U.S. —, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), which held unconstitutional, as cruel and unusual punishment:
• the imposition of mandatory life sentences for those individuals under the age of 18 at the time of the commission of murder; and
• the sentencing of juveniles without first considering the offender’s age at the time of the crime, and attendant circumstances of his youth.
See, State v. Brooks, 47,394 (La.App.2d Cir.12/12/12), 108 So.3d 161, writ denied, 13-0080 (La.5/31/13), 118 So.2d 393.
On remand, the trial court ordered a presentence investigation report (“PSI”) and held, a sentencing hearing at which the *573 defendant, his parents, and an older brother testified.
Brief Synopsis of the Facts[1]
Two juvenile gangs in Shreveport had long been having a turf battle over who had rights to the Canaan Village Apartment Complex. The dispute became heated. This defendant flashed a pistol earlier in the afternoon of |2the shooting. About a half hour later, the rival group of young men started down a hill toward the defendant, his younger brother, and a friend named “P.J.” Their purpose was to engage in a fistfight.
The defendant’s younger brother grabbed an assault rifle, brandished it toward the oncoming group, and fired it into the ground. The defendant grabbed the “chopper” and shot a dozen times at the rival group, all of whom began fleeing up the hill. After the defendant started firing, P.J. also began shooting at those who were fleeing. P. J. used a pistol.
Five witnesses testified that the shooting began with the defendant.[2] An innocent victim, Terrell Savore, was killed during this barrage.
Four days before trial, the state filed a supplemental discovery response indicating that Dr. Long Jin, the prosector, had rendered an oral opinion that Terrell had probably died as a result of a gunshot from a handgun, not an assault rifle. Thus, it could be argued that the defendant, while a principal to the killing that supports his conviction, was not the shooter who actually fired the fatal bullet.[3]
The PSI describes the defendant’s family history.[4]
|sAt the sentencing hearing, the defendant’s mother testified that:
• she had problems raising her children due to her drug usage;
• she was often jailed on drug-related matters;
• during her incarceration, her mother cared for the children;
• the family moved frequently;
• the defendant was rebellious and had trouble in school;
• he was held back on several occasions; and
• he had a few incidents of fighting as a child.
Henry Blake, Jr., the defendant’s father, testified that:
• he was uninvolved in his son’s life, having left him when he was five;
• he recalled one instance of attending a sports-related activity; and
• he was using ánd selling drugs during the defendant’s childhood.
Henry Blake, III, the defendant’s older brother, testified that:
*574 • he was 14 years older than the defendant;
• the defendant’s childhood • lacked a strong family unit at home; and
• he would be willing to assist the defendant in reentering society if he were to be released at some point in the future.
The defendant testified at the sentencing hearing that:
• he quit school when he was about 14 years old;
• his mother was on drugs and in and out of jail during his childhood;
• his grandmother died when he was 10 or 11 years old;
• after her death, his family consisted of his brothers;
• the murder grew out of “an altercation that went on”;
• the crime began from “little arguments”;
• the dispute got out of hand quickly and he regretted the killing;
]£ he committed a crime and that what he did was wrong;[5]
• after his arrest, he had been involved in some fights at Caddo Correctional Center, but not since he has been housed at Angola; and
• he denied any knowledge of threats toward the victim’s family.
The Defendant’s Position
The Louisiana statutory implementation of Miller, supra, is found in newly enacted La. C. Cr. P. art. 878.1, effective August 1, 2013.[6] The defendant’s attorney agreed at resentencing that his client’s actions were “absolutely criminal.” Nonetheless he argued that this | .^defendant, 17 at the time of the crime, should be eligible for parole, since he is far from the worst of offenders and this is far from the worst case.[7]
*575 The State’s Position
The state emphasizes the seriousness of the offense, the level of violence involved, and the fact that the victim was an innocent 15-year-old bystander. The state argues that the defendant’s lack of remorse and lack of understanding[8] as to the senseless nature of this crime make parole eligibility in 35 years inappropriate for such a violent offender.[9]
Actions of the Trial Court at the Sentencing Hearing
We have before us for review the sentencing decision of a second judge, issued in conformity with the first judge, disallowing parole eligibility for this defendant.[10] Before resentencing the defendant to life imprisonment without the benefit of parole, the trial court expressly adopted the reasons and considerations of the original sentencing judge and provided further reasons in support of the denial of parole:
• the complete lack of explanation for this senseless murder;
k* the defendant’s lack of remorse, noting that the only regret he seemed to exhibit was that he had been caught;
• the defendant’s apparent failure to comprehend that he needlessly escalated the situation by taking the assault rifle from his brother and firing it at the others, missing a chance to defuse the situation;
• the defendant endangered many lives;[11]
• in comparing these facts with Miller, supra, Brooks was close to his 18th birthday at the time of the offense;[12] and
• the circumstances of this offense and this offender, and considering the effect of this crime on the 15-year-old victim’s family, the trial judge found a life sentence without all benefits to be appropriate.
The defendant urges that under these facts, life imprisonment without benefit of parole is excessive and therefore violates the Eighth Amendment of the U.S. Constitution and Art. I, § 20 of the Louisiana Constitution.
DISCUSSION
In Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), the *576 Supreme Court prohibited life without parole in non-homicide cases, for those under the age of 18 at the time of the crime.
In Miller, supra, the Supreme Court held that mandatory life without parole violates the Eighth Amendment’s prohibition against cruel and unusual punishment, if the murderer was under 18 years old at the time of the crime. Miller, supra, does not categorically prohibit life without benefit of parole for juveniles, but a sentencing court must first consider an 17offender’s youth and attendant characteristics as mitigating circumstances before determining whether to impose the harshest possible penalty for a juvenile offender. See State ex rel. Landry v. State, 2011-0796 (La.1/18/13), 106 So.3d 106.
La. C. Cr. P. art. 878.1 became effective August 1, 2013. The statute implements the Supreme Court’s holding in Miller, supra.
An article 878.1 hearing requires that a trial court consider any aggravating and mitigating evidence relevant to the offense or the character of the youthful defendant which would indicate whether or not the sentence should be subject to parole eligibility pursuant to the provisions of La. R.S. 15:574.4(E). See State v. Jones, 13-2039 (La.2/28/14), 134 So.3d 1164. This the trial court has done.
Our previous jurisprudence pertaining to the review of sentences provides only limited assistance under these new considerations.[13]
1 «ANALYSIS
In the instant case, the trial court dutifully did exactly what we requested in our opinion that disposed of the defendant’s first appeal. The trial court did precisely what our Supreme Court ordered in another case less than two months ago, ie., that the trial court hold “a hearing in compliance with La. C. Cr. P. art. 878.1, implementing the Miller decision in Louisiana, before resentencing defendant to a term of life imprisonment at hard labor that, in the court’s discretion, after considering any aggravating and mitigating evidence relevant to the offense or the character of defendant, may, or may not, be subject to parole eligibility pursuant to the provisions of La. R.S. 15:574.4(E).” See State v. Jones, supra.
The trial court held the required sentencing hearing, thoroughly reviewed the PSI, heard all submitted testimony, and closely observed the defendant’s demean- or. The court then concluded that the facts of this case should preclude parole eligibility for this remorseless killer. We agree.
Finally, we cannot say that the sentence imposed is constitutionally excessive *577 as it is not grossly out of proportion to the seriousness of the offense, and it is certainly not a purposeless and needless infliction of pain and suffering. See State v. Dorthey, 623 So.2d 1276 (La.1993). This sentence does not shock the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379.
CONCLUSION
For the foregoing reasons, defendant’s sentence is AFFIRMED.
CARAWAY, J., dissents with written reasons.

. The facts are reviewed in much more detail in Brooks I.

. One witness testified that the first shot was fired from up the hill toward the defendant and his two companions. This ear witness admitted not seeing any of the shooting and further admitted that he was smoking marijuana at the time of the shooting.

. See Judge Caraway's concurrence in State v. Brooks, supra.

. The defendant is the fourth of five sons born to Valerie Brooks. He was reared primarily by his mother, with minimal contact with his father. The defendant dropped out of school in the seventh or eighth grade, as his mother was unable to keep him in school. The defendant did not pursue a GED and has never been employed. He had a juvenile record, but it was not presented to, or reviewed by, the trial court. The victim’s family opposes parole eligibility for the defendant. The defendant was 17 years and eight months old at the time of the shooting. While he does have a criminal history, this was his first crime against a person, as an adult.

. The trial court particularly noted at the sentencing hearing that the defendant appeared to lack remorse, as reflected by the following colloquy:
Q: Are you sad that it happened and that somebody died?
A: I knew the victim. It wasn’t like we were friends before it happened. It wasn't something that just happened. It was basically a misunderstanding, a mistake that happened.
Q: And the firing shots back and forth, that was something that just got out of hand?
A: Yeah.
[[Image here]]
Q: Do you feel like you were just reacting because somebody was doing something wrong to you?
A: I was acting off of their [the other group’s] reactions.

. La. C. Cr. P. Art. 878.1. Sentencing hearing for juvenile offenders
A. In any case where an offender is to be sentenced to life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense, a hearing shall be conducted prior to sentencing to determine whether the sentence shall be imposed with or without parole eligibility pursuant to the provisions of R.S. 15:574.4(E).
B. At the hearing, the prosecution and defense shall be allowed to introduce any aggravating and mitigating evidence that is relevant to the charged offense or the character of the offender, including but not limited to the facts and circumstances of the crime, the criminal history of the offender, the offender’s level of family support, social history, and such other factors as the court may deem relevant. Sentences imposed without parole eligibility should normally be reserved for the worst offenders and the worst cases.
(Our emphasis.) We infer that this last sentence of La. C. Cr. P. art 878.l.B mandates a comparison with murders committed by others who were not yet 18 at the time of the homicide.

.On appeal, defendant urges that in reimposing a life sentence widrout the benefit of parole, the trial judge failed to adequately consider his personal history, lack of family support, lack of education or any potential defendant has for rehabilitation in the future. Defendant argues that there was no planning *575 or premeditation, as the shooting was just an escalation of an altercation between two groups of boys.

. His words at the sentencing hearing reveal a defendant who fails to understand that this simmering verbal argument did not justify the level of violence he employed.

. We agree with the state that the trial court fully complied with the requirements of article 878.1. The court thoroughly reviewed the PSI report. The court heard the testimony of the witnesses at the resentencing hearing. In particular, the trial court observed the unre-morseful testimony of the defendant himself, as well as taking into account all possible mitigating factors applicable to the young man.

. The judge who presided at trial and at the initial sentencing was Hon. Michael A. Pit-man. The judge pro tern who presided over the sentencing hearing and resentencing was Hon. E. Joseph Bleich, as Judge Pitman had by then rotated onto the civil bench.

. This case could have been a mass murder of several totally innocent people, but for the fact that the defendant was apparently a poor shot.

. Defendant Miller was 14 years old at the time of his gruesome crime, had been serially abused as a child, and had attempted suicide on several occasions. Miller killed the victim using a baseball bat and by arson. At the time of the murder, he was high on drugs and alcohol. In the consolidated companion case, defendant Jackson was also 14 years old at the time of the homicide. He never touched any dangerous weapon and did not pull the trigger that killed the victim of the robbery-homicide. In contrast, Brooks was aged 17 years, eight months, when he randomly shot into the crowd.

. A sentence violates La. Const. Art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La. 1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir. 1/24/07), 948 So.2d 379.
The trial court is given wide discretion in the imposition of sentences within the statutory limits. The sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams, 03-3514 (La. 12/13/04), 893 So.2d 7; State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330; State v. Diaz, 46,750 (La.App.2d Cir. 12/14/11), 81 So.3d 228. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams, supra; State v. Free, 46,894 (La.App.2d Cir. 1/25/12), 86 So.3d 29.