CHEHARDY, C.J.
Defendant, Dwayne Williams, appeals his conviction and sentence for second degree murder. For the reasons that follow, we affirm defendant's conviction and sentence and remand the matter for correction of the State of Louisiana Uniform Commitment Order.
FACTUAL AND PROCEDURAL HISTORY
Robert Howard was shot in the carport outside of his home on the evening of April 16, 2009 and died three weeks later on May 10, 2009. His cause of death was a gunshot wound to the neck that transected his spinal cord.
On the night of the shooting, the victim's father, Robert England, was inside when he heard five gunshots. He ran outside to find his son lying on the ground with a gunshot wound to his neck. He was still conscious and stated that he did not know who shot him.
Deputy Ted Raymond of the Jefferson Parish Sheriff's Office ("JPSO") arrived on the scene around 7:50 p.m. The victim was still conscious and advised the officer that he did not know who shot him. After paramedics had transported the victim to the hospital, Detective Jeffrey Rodrigue arrived on the scene and began trying to locate witnesses.
After the victim succumbed to his injuries on May 10, Detective Rodrigue spoke with Adrian "Stank" Haynes and Dagenera Molison. Mr. Haynes later testified at trial that he was close friends with the victim and lived around the corner from him in the Lincolnshire subdivision of Marrero. On April 16, 2009, Mr. Haynes, the victim, and their friend, James Moore, played basketball and headed home around 6:00 p.m. Soon after Mr. Haynes and the victim made it back to the victim's house, Mr. Haynes went home to shower and planned to return so the three friends could shoot pool later that night. But when Mr. Haynes returned, the victim had been shot.
Dagenera Molison later testified at trial that she knew both defendant and the victim and was dating defendant at the time of the shooting. She testified that she spoke with defendant after the shooting and he told her that he did not mean to shoot the victim, but that he intended to shoot James Moore.
Based on his conversations with Mr. Haynes and Ms. Molison, Detective Rodrigue spoke with James Moore and Rickell London. Mr. Moore gave two taped statements.[1] His first statement began at *570 10:46 p.m. and concluded at 10:55 p.m. on May 13, 2009. Mr. Moore explained that on the day before the shooting, he had an altercation with Angelica Williams, defendant's sister. Then, on the day of the shooting, Mr. Moore, Mr. Haynes, and the victim played basketball. When they finished, Mr. Haynes and the victim went back to the victim's house while Mr. Moore went back to his house. Mr. Moore was walking back over to the victim's house when he noticed a champagne-colored Toyota pass by with a driver and one passenger. When Mr. Moore got to the victim's house, he sat with the victim in his carport and noticed the same car pass two or three times with a female driver and male passenger. He then heard gunshots, saw the victim slumped over, and ran off. Mr. Moore stated that he did not know who shot the victim.
Mr. Moore's second statement began at 12:33 a.m. and concluded at 12:36 a.m. on May 14, 2009. In this statement, he changed his story and stated that he saw defendant shoot the victim. He then identified defendant from a photographic lineup.
At trial, Mr. Moore testified that he had a run-in with defendant's sister the day before the shooting-though Ms. Williams testified at trial and denied any such run-in. Mr. Moore explained that on the day of the shooting he, the victim, and Mr. Haynes had played basketball. Afterwards, he went home, while Mr. Haynes and the victim went to the victim's house. Mr. Moore was walking over to meet them when he observed a vehicle with defendant in the passenger seat and a female in the driver seat. Soon after he met up with his friends, Mr. Haynes left to shower, leaving Mr. Moore and the victim sitting in the carport in front of the victim's garage. While there, Mr. Moore noticed the vehicle circle the block and then heard gunshots. He told the victim he was going home because "something looking funny." As he started to walk away, he heard six gunshots at close range and saw defendant discharging a handgun in the victim's direction. When Mr. Moore noticed the victim slumped over, he ran home.
Mr. Moore also testified about some prior inconsistent statements. He testified about a letter he wrote while incarcerated on February 1, 2010 to a "Mr. Robertson," wherein he asserted that he was "on lockdown" and that he did not see defendant shoot the victim. He explained in the letter that he only said he did in his statement because he was threatened by the detectives. He also testified about an affidavit he signed on November 30, 2010 while incarcerated. In this affidavit, Mr. Moore stated that he did not see defendant shoot the victim and that he only said he did because of threats from the detectives. He further testified about phone calls he made from jail between October 2012 and February 2013 to his grandmother and cousin in which he told them that he did not see who shot the victim. At trial, he recanted his statements in the February 1, 2010 letter, the November 30, 2010 affidavit, and the phone calls, and testified that his testimony at trial was the truth.
Rickell London testified at trial that around 7:30 p.m. on April 16, 2009, defendant asked her to give him a ride to Lincolnshire "to go kill someone." She did not think he was serious, but she noticed that he had a gun in his waistband. Ms. London was driving a champagne and burgundy Toyota Camry and defendant was in the front passenger seat. As they approached Lincolnshire, defendant remarked to Ms. London, "Whatever goes on stays." It was then that she realized defendant's homicidal intent was sincere. Defendant directed her through the subdivision, and they circled one block several times. When Ms. London noticed "three or four boys" in *571 front of a house, defendant instructed her to park two houses down and to turn off her headlights. She complied. Defendant exited the vehicle and pulled the gun from his waistband. Within seconds, Ms. London, who could not see defendant or the other boys, heard several gunshots. Defendant soon returned to the car, put the gun back in his waistband, and told her to "drive off fast." Ms. London testified that she was offered a plea agreement to accessory after the fact to second degree murder in exchange for her testimony.
Ms. London also testified about prior inconsistent statements she had made. She explained that while incarcerated on a charge of principal to second degree murder, she made several phone calls to her friends and family, in which she stated that she did not know anything about the shooting. She acknowledged statements she made to an assistant district attorney in which she said she had nothing to do with the shooting. Ms. London further testified about her statements she gave to Detective Rodrigue in the days after the victim's death. She explained that she lied in her first statement when she said that she did not drive defendant on the day of the shooting. Ms. London recanted her prior inconsistent statements and testified that her testimony at trial was the truth.
Detective Rodrigue obtained an arrest warrant for defendant based on his conversations with Mr. Moore and Ms. London. And on July 16, 2009, a Jefferson Parish Grand Jury returned an indictment charging defendant with the second degree murder of Robert Howard. Defendant entered a plea of not guilty.
The matter proceeded to a trial by jury on March 11, 2013. On March 14, 2013, ten of the twelve jurors returned a verdict of guilty as charged. On April 23, 2013, defendant moved for a new trial, which the court heard and denied on February 18, 2014. Following numerous continuances, defendant was sentenced on November 13, 2017 to life imprisonment at hard labor with the benefit of parole.[2] Defense counsel orally moved for reconsideration of sentence which was denied in open court. On November 14, 2017, defendant filed a written motion for reconsideration and a motion for appeal. His appeal was granted on November 20, 2017.
After the record in this appeal was lodged here, on March 14, 2018, the Clerk of this Court ordered the district court to rule upon defendant's written motion for reconsideration of sentence. The district court denied defendant's motion on March 19, 2018.[3]
ASSIGNMENTS OF ERROR
On appeal, defendant raises four assignments of error:
(1) The State failed to prove defendant guilty of second degree murder beyond a reasonable doubt and, by the trial court's ruling and the State's withholding of evidence, the defendant was denied full cross-examination of the only witness who purported to identify him.
*572 (2) The district court erred in denying the motion for new trial based on trial defect of having a juror decide the case who was not qualified to serve.
(3) The district court erred in denying the motion to declare La. C.Cr.P. art. 782 unconstitutional and in accepting a verdict in this case that was not unanimous.
(4) The district court erred in imposing an illegal sentence, as it violated the ex post facto clause and life imprisonment with parole was unconstitutionally excessive under the circumstances of this offense or the offender.
DISCUSSION
Assignment of Error One
Defendant submits six arguments in support of his first assignment of error:
(a) James Moore was the single witness who identified Dwayne Williams as the shooter. James Moore's purported identification of Dwayne Williams changed three times and does not support the conviction;
(b) Defendant was prevented from cross-examination of James Moore as to his violent history as a juvenile and involvement in other conflicts, in particular a murder, such that other persons may have been out to get him, in addition to reflecting on his credibility and self-interest;
(c) Reasonable hypothesis as to other perpetrators were not excluded; instead the State prevented the defendant from developing them. The day of his death, Robert Howard was hanging out with Stank and James Moore who were known to be involved in drug sales, as each of them had distribution arrests after this incident. Moore had attacked someone in Bridge City and allegedly had killed someone over his brother's drug death. The families and friends of these people were likely seeking retribution.
(d) Dwayne Williams was convicted on a vote of 10-2. If only one more juror was persuaded by the evidence about James Moore's activities, the Brady violation would have effected [sic] the verdict and Mr. Williams would not have been convicted.
(e) Neither Dagenera Molison or Rickell London identified Dwayne Williams. Neither of them were believable as they had their own interests, their claims could not be verified, and London's statements also changed multiple times.
(f) The State offered no corroboration of the identification by forensic evidence.
This opinion addresses these arguments in the following three subsections.
Sufficiency of the Evidence
We first address the sufficiency of the evidence. See State v. Hearold , 603 So.2d 731, 734 (La. 1992) ("When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.").
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Neal , 00-674 (La. 6/29/01), 796 So.2d 649, 657, cert. denied , 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002) ;
*573 State v. Mickel , 09-953 (La. App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied , 10-1357 (La. 1/7/11), 52 So.3d 885.
This directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing. State v. Caffrey , 08-717 (La. App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied , 09-1305 (La. 2/5/10), 27 So.3d 297. This deference to the fact finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. Id. As a result, under the Jackson standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at trial established guilt beyond a reasonable doubt, but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones , 08-20 (La. App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. Caffrey , supra. Indeed, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. See State v. Bailey , 04-85 (La. App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied , 04-1605 (La. 11/15/04), 887 So.2d 476, cert. denied , 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon , 07-915 (La. App. 5 Cir. 3/11/08), 982 So.2d 146, 153, writ denied , 08-0987 (La. 1/30/09), 999 So.2d 745.
Defendant was convicted of second degree murder, a violation of La. R.S. 14:30.1. Second degree murder is defined, in pertinent part, as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. State v. Seals , 09-1089, pp. 13-14 (La. App. 5 Cir. 12/29/11), 83 So.3d 285, 306, writ denied , 12-0293 (La. 10/26/12), 99 So.3d 53, cert. denied , 569 U.S. 1031, 133 S.Ct. 2796, 186 L.Ed.2d 863 (2013) (citing La. R.S. 14:10(1) ). The determination of specific intent is a question of fact. Id. , 09-1089 at 14, 83 So.3d at 306. Specific intent may be inferred from the circumstances and from the defendant's actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim's injuries. Id. Further, a specific intent to kill may be inferred from the intentional use of a deadly weapon such as a knife or gun. State v. Cochran , 09-85 (La. App. 5 Cir. 6/23/09), 19 So.3d 497, 508, writ denied , 09-1742 (La. 3/26/10), 29 So.3d 1249 ; see also State v. Gonzalez , 07-449, p. 8 (La. App. 5 Cir. 12/27/07), 975 So.2d 3, 8, writ denied , 08-0228 (La. 9/19/08), 992 So.2d 949 ("The act of aiming a lethal weapon and discharging it in the direction of the victim supports a finding by the trier of fact that the defendant acted with specific intent to kill.").
In addition to proving each statutory element of the crime charged, the State must also prove the identity of the perpetrator. State v. Robinson , 14-222 (La. App. 5 Cir. 9/24/14), 150 So.3d 900, 903, writ denied , 14-2267 (La. 8/28/15), 175 So.3d 964. Thus, in order to carry its *574 burden of proof, the State is required to negate any reasonable probability of misidentification. Id. Positive identification by only one witness is sufficient to support a conviction. Id.
In the instant case, James Moore testified that he saw defendant shoot the victim several times. Rickell London testified that she drove defendant to the scene of the shooting at the time of the shooting, and testified that on the way to the shooting, defendant had a gun and told her he wanted to kill someone. Degenera Molison testified that defendant told her after the shooting that he did not intend to shoot the victim.
Defendant argues that these witnesses' testimonies were insufficient to support his conviction due to their prior inconsistent statements. It is well settled that in assessing witness credibility, the trier of fact, may accept or reject, in whole or in part, the testimony of any witness. Here, the jury was made aware of the witnesses' prior inconsistent statements, and in returning a guilty verdict, evidently found their trial testimony credible. This is the jury's prerogative and we will not re-evaluate the credibility of witnesses or re-weigh the evidence on appeal.
Defendant also argues that the evidence was insufficient to support his conviction due to the lack of physical evidence. Physical evidence is not required to support a conviction, as it is well-established that in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. See Dixon , supra ; see , e.g. , State v. Page , 08-531 (La. App. 5 Cir. 11/10/09), 28 So.3d 442, writ denied , 09-2684 (La. 6/4/10), 38 So.3d 299 (affirming defendant's second degree murder conviction obtained on the basis of witness testimony without any physical evidence). Here, three witnesses identified defendant as the perpetrator.
Defendant further argues that the evidence was insufficient to support his conviction because every reasonable hypothesis of innocence was not excluded in that other individuals were not excluded as the perpetrator. The State's burden of proof does not require the exclusion of every reasonable hypothesis of innocence. Such exclusion is only necessary in cases in which the State relies on circumstantial evidence. "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. Here, the State did not rely on circumstantial evidence, but offered direct evidence in the form of eyewitness testimony to prove defendant's guilt.
Viewing the evidence in the light most favorable to the prosecution under the Jackson standard, we find that the evidence was sufficient to convince a rational trier of fact beyond a reasonable doubt the defendant was guilty of the second degree murder of Robert Howard.
Brady Claim
Defendant argues that the State's withholding of evidence that James Moore was under investigation for a 2012 murder was reversible error under Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Defendant submitted this same argument in his motion for new trial, arguing that this evidence, newly-discovered after trial, warranted a new trial. In ruling on defendant's motion for new trial, the district court determined that this evidence was in fact withheld from the defense but found no Brady violation because the court found no reasonable probability that the result of the proceeding would have been different had the *575 evidence been disclosed. Now on appeal, defendant again submits this Brady claim and contends a new trial is warranted.
In Brady , the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady , 373 U.S. at 87, 83 S.Ct. at 1196-97. Since Brady , the Court has held that the duty to disclose such evidence is applicable even though there has been no request by the accused, United States v. Agurs , 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, United States v. Bagley , 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). The Court has also explained that such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 682, 105 S.Ct. 3375, 3380 ; see also Kyles v. Whitley , 514 U.S. 419, 433-434, 115 S.Ct. 1555, 1565-66, 131 L.Ed.2d 490 (1995). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Bagley , supra at 682, 105 S.Ct. 3375. Moreover, the rule encompasses evidence "known only to police investigators and not to the prosecutor." Kyles , supra at 438, 115 S.Ct. 1555. In order to comply with Brady , therefore, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." Id. at 437, 115 S.Ct. 1555.
Synthesizing the Brady jurisprudence, the Court held in 1999 that "[t]here are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene , 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999).
It seems defendant presents two arguments in support of his Brady claim. First, James Moore's credibility would have been impeached with this additional bad character evidence. And second, Mr. Moore's credibility would have been impeached with this evidence on the basis that it would call into question whether Mr. Moore was offering his testimony in exchange for leniency on murder charges against him. We address each in turn.
With regard to the first argument, our review of the record indicates that James Moore's credibility was effectively impeached by defense counsel at trial without this evidence. The jury was made aware of Mr. Moore's several prior inconsistent statements and Mr. Moore testified about his own criminal history, detailing his incarceration relative to a second degree battery conviction and his arrest on possession of marijuana in a school zone. We therefore find that this evidence reflecting additional criminal conduct amounts to cumulative impeachment evidence, and that defendant has not demonstrated a reasonable probability that the outcome of the proceeding would have been different had it been disclosed to the defense.
With regard to the second argument, we first observe that whether the prosecution may have leverage over a witness due to that witness's pending criminal charges is a valid area of cross-examination. State v. Wiley , 10-811 (La. App. 5 Cir. 4/26/11), 68 So.3d 583, 592, writ denied , 11-1263 (La. 3/30/12), 85 So.3d 106. A witness's hope or knowledge that he will receive leniency from the state is highly *576 relevant to establish bias or interest. Id. And a witness's bias or interest may arise from arrests or pending criminal charges, or the prospect of prosecution, even when he has made no agreements with the State regarding the conduct. Id.
At the hearing on the motion for new trial, the evidence established that through the investigation of a murder and attempted murder on May 12, 2012, James Moore was developed as a suspect. Detective Rhonda Goff attested in an affidavit that she submitted an application for a warrant for Mr. Moore's arrest on March 15, 2013, the day after defendant was convicted in the present case. Mr. Moore had testified as a State's witness at defendant's trial on March 13, 2013.
Upon consideration of these facts, we find that defendant cannot "establish[ ] the prejudice necessary to satisfy the 'materiality' inquiry[,]" i.e. , whether there was a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Strickler , supra at 282, 119 S.Ct. 1936, 1948. The warrant for Mr. Moore's arrest was not issued until after defendant's trial had concluded. Thus, not only were no criminal charges pending against him, but the evidence indicates that Mr. Moore was not even aware that he was a suspect or being investigated on the charges. Under these circumstances, there is no possibility that the State had any leverage over Mr. Moore on the basis of the 2012 murder investigation at the time of defendant's trial. Accordingly, there is no reasonable probability that the outcome of the proceeding would have been different had evidence of that investigation been disclosed to the defense.
Confrontation Clause Claim
Defendant argues that the district court's refusal to allow the defense to cross-examine James Moore on his prior juvenile adjudications constitutes reversible error. During defense counsel's cross-examination of James Moore, counsel was questioning Mr. Moore about his criminal background when the State objected and a bench conference was held. Therein, defense counsel noted his intention to question Mr. Moore about his juvenile adjudications, but the court ruled that he could not bring those up and counsel objected.
The Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to confront witnesses against him. State v. Coleman , 13-942 (La. App. 5 Cir. 05/14/14), 142 So.3d 130, 135-36, writ denied , 14-1224 (La. 1/23/15), 159 So.3d 1056. This right of confrontation is not unlimited, however, and guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish. Id. at 136.
The trial court has discretionary power to control the extent of the examination of witnesses, provided that the court does not deprive the defendant of his right to effective cross-examination. State v. Alfaro , 13-39 (La. App. 5 Cir. 10/30/13), 128 So.3d 515, 530, writ denied , 13-2793 (La. 5/16/14), 139 So.3d 1024. A trial court's rulings as to the scope and extent of cross-examination should not be disturbed on appeal absent an abuse of the court's broad discretion. Coleman , supra at 136.
The Louisiana Code of Evidence permits a witness to be cross-examined on any matter relevant to any issue in the case, including credibility. See La. C.E. art. 611(B). Indeed, this Court recognizes that impeaching a witness for bias or interest and exposing a witness' motivation in *577 testifying are proper functions of cross-examination. Coleman , supra.
Evidence of a witness's prior juvenile adjudication is not commonly admissible to attack the witness's credibility. State v. Nguyen , 04-321 (La. App. 5 Cir. 9/28/04), 888 So.2d 900, 911, writ denied , 05-220 (La. 4/29/05), 901 So.2d 1064 (citing La. C.E. 609.1(F) ). But the Louisiana Supreme Court has held:
The extreme importance and constitutional status of the right to confrontation (which includes the reasonable opportunity to impeach the witness' credibility) requires that any statutory right to confidentiality of juvenile proceedings under these circumstances must yield if the discrediting value of a prior juvenile adjudication is such that its disclosure is essential to a fair trial.
State v. Toledano , 391 So.2d 817, 820 (1980).
This standard entails a balancing test to determine whether the impeachment value of the adjudication is outweighed by the State's interest in maintaining the confidentiality of juvenile records. Nguyen , supra.
Counsel did not proffer any court records or other evidence under La. C.E. art. 103, which revealed that further information on this issue was relevant to this case. The record does not therefore reflect how further cross-examination would have helped the defense. Accordingly, we find no abuse of the district court's discretion in refusing to allow the defense to cross-examine James Moore on his prior juvenile adjudications.
In any event, a violation of a defendant's right to confrontation is subject to a harmless error analysis. State v. Lewis , 05-170 (La. App. 5 Cir. 11/29/05), 917 So.2d 583, 593, writ denied , 06-757 (La. 12/15/06), 944 So.2d 1277. An error is harmless when the guilty verdict was surely unattributable to the error. Id. Whether an error is harmless in a particular case depends upon many factors, including the following: 1) the importance of the witness' testimony; 2) whether the testimony was cumulative in nature; 3) whether corroborating or contradictory evidence regarding the major points of the testimony existed; 4) the extent of cross-examination permitted; and 5) the overall strength of the State's case. Id.
Here, we find the evidence of Mr. Moore's juvenile adjudications would have amounted to cumulative impeachment evidence. And in light of the other witness testimony identifying defendant as the shooter, we conclude that even if it was error to disallow defense counsel from cross-examining Mr. Moore on his juvenile adjudications, we find any such error was harmless.
This assignment of error is without merit.
Assignment of Error Two
In defendant's second assignment of error, he argues that the district court erred in denying his motion for new trial on the basis of an unqualified juror. In his motion for new trial, defendant argued that one juror was disqualified on the basis of a prior felony conviction under La. C.Cr.P. art. 401(A)(5), which provides: "In order to qualify to serve as a juror, a person must:...Not be under indictment for a felony nor have been convicted of a felony for which he has not been pardoned by the governor."
At voir dire on March 11, 2013, one prospective juror, R.H., advised the court that she had a prior felony conviction for possession of alprazolam. During a discussion regarding her eligibility to serve, the clerk advised: "I ran her name, and the first offender pardon letter is in the computer."
*578 Based on this, the court determined that she had been pardoned and permitted her to remain on the venire. The parties did not challenge R.H. for cause or exercise peremptory challenges to strike her as a potential juror. In fact, the record reflects that defendant only exercised five of his twelve peremptory challenges. R.H. was ultimately accepted on to the petit jury and was one of the ten jurors who voted for defendant's guilt.
In his motion for new trial, defendant argued that the defense mistakenly believed R.H. was qualified to serve as a juror pursuant to the first-offender pardon. In this mistaken belief, the defense (as well as the State and the court) had relied on the pre-2010 version of La. C.Cr.P. art. 401(A)(5), which provided: "In order to qualify to serve as a juror, a person must:...Not be under indictment for a felony nor have been convicted of a felony for which he has not been pardoned." But in 2010, the Legislature amended the provision so that it now provides: "...Not be under indictment for a felony nor have been convicted of a felony for which he has not been pardoned by the governor ."[4] (Emphasis added). Therefore, since R.H. had not been pardoned by the governor, she was not qualified to serve as a juror, and the defense did not became aware of the change in the law until after the jury verdict. On this basis, and especially on account of the fact that R.H. was one of the ten jurors who voted for defendant's guilt, defendant argued he was entitled to a new trial.
The decision on a motion for a new trial rests within the sound discretion of the trial court and the ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Speaks , 16-163 (La. App. 5 Cir. 12/7/16), 204 So.3d 1167, 1204-05, writ denied , 17-185 (La. 10/16/17), 228 So.3d 751
In his motion for new trial, defendant submitted his argument under the statutory authority of La. C.Cr.P. art. 851(B)(3), which provides that a new trial shall be granted when "[n]ew and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty." On appeal, however, defendant now raises this argument under the authority of La. C.Cr.P. art. 851(B)(4), which provides that a new trial shall be granted when "[t]he defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment."
We observe La. C.Cr.P. art. 851(B)(4) is the proper authority here; yet, regardless of the statutory authority, relator was required to show that the claimed defect (or newly discovered evidence) was not discoverable before the verdict through the exercise of reasonable diligence. The Louisiana Supreme Court has further explained a defendant's burden for a new trial on the basis of juror disqualification:
[I]n order for a defendant to avail himself of the lack of qualification of a juror, it must be made to appear that the disqualification of the juror was not known to defendant, or his counsel, when the juror was accepted by him and could not then have been ascertained by due diligence; and it must be made to appear that such diligence was exercised by an examination of the juror, on his *579 voir dire, touching his qualifications, and that he answered falsely.
State v. Baxter , 357 So.2d 271, 274 (La. 1978).
In Baxter , similar to the instant case, ten of twelve jurors convicted the defendant of second degree murder. Baxter , supra at 273. The defendant moved for a new trial on the basis that one of the jurors was not qualified to serve as a convicted felon and was one of the ten jurors who had voted guilty. Id. Neither the defense nor the prosecution was aware of the juror's conviction until after the verdict. Id. The trial court denied the motion for new trial, which the supreme court affirmed on certiorari review. Id. at 275.
During voir dire, in response to the prosecution's question of whether anyone had been convicted of a violent crime, the juror at issue answered in the negative. Baxter , supra at 272. In fact, he had been convicted of the federal crime of presenting false claims, a violation of 18 U.S.C. § 287, and sentenced in 1971 by a federal court in Georgia, to serve three years imprisonment. Id. at 272-73. At the motion for new trial hearing, he explained that his probation officer told him that he would be automatically pardoned by the State of Louisiana after his three-year sentence had expired. Id. at 273. Being so informed, the juror assumed that he had been pardoned and did not consider himself disqualified. Id.
In affirming the denial of defendant's motion for new trial, the supreme court reasoned:
This case is unusual in that [the juror] was apparently entirely honest in answering that he had not been charged with a violent crime, and he was careful to limit his responses to that category. He testified that while imprisoned he was told his was not a violent crime and he was allowed on work details, a privilege not accorded those convicted of violent crimes; hence the reason for his careful distinction between violent and serious crimes. When this distinction was made at the voir dire examination defense counsel should have been alerted to make further inquiry.
Baxter , supra at 275.
The court added: "[T]he defense should not be permitted to sit by during voir dire examination and learn as little as possible about a prospective juror, and then, after an unfavorable verdict, discover or seek out a ground for disqualification and demand a new trial." Baxter , supra at 274.
During voir dire in the present case, R.H. truthfully advised the court that she had a felony conviction and the court determined that she had a first-offender pardon. It was not until after the verdict that the defense claimed to have learned the law provides that only a governor's pardon can qualify a convicted felon for jury service.
In order to obtain a new trial on the basis of juror disqualification, a defendant must show that the grounds for disqualification could not have been ascertained through the exercise of reasonable diligence. Defendant has not made that showing here. We find that counsel could have easily discovered the governing law with minimal diligence. Ignorance of the law, as has often been stated, is no excuse, and defendant may not now avail himself of trial counsel's ignorance. We therefore find no abuse of the district court's discretion in denying defendant's motion for new trial on the basis of juror disqualification.
This assignment of error is without merit.
Assignment of Error Three
In defendant's third assignment of error, he argues that the district court erred *580 in denying his motion to declare La. C.Cr.P. art. 782 unconstitutional and in accepting a verdict in this case that was not unanimous. On August 2, 2010, defendant filed a motion to declare La. C.Cr.P. art. 782(A) unconstitutional, which the district court denied following a hearing on October 5, 2010.
The constitutionality of La. C.Cr.P. art. 782 is settled law. The Louisiana Supreme Court has affirmed its constitutionality repeatedly. See State v. Bertrand , 08-2215 (La. 3/17/09), 6 So.3d 738, 742. As an intermediate appellate court, we are bound by that precedent. State v. Thomas , 10-2 (La. App. 5 Cir. 11/9/10), 54 So.3d 678, 686, writs denied , 10-2752 (La. 5/20/11), 63 So.3d 974 and 10-2758 (La. 4/25/11), 62 So.3d 89.
This assignment of error is without merit.
Assignment of Error Four
In defendant's fourth assignment of error, he challenges his sentence on several grounds, each of which we address in turn.
First, defendant argues that his sentence violates the ex post facto clause. He contends that because the mandatory sentencing provision that was in effect at the time of his offense was ruled unconstitutional in Miller v. Alabama , 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), he should be resentenced according to the penalties provided for in the lesser responsive verdict of manslaughter. He presents his argument in his brief as follows: "The sentence imposed on Dwayne Williams had to be one that was available in 2009. When the 2009 sentence for second degree murder was declared unconstitutional as applied to juvenile offenders, only 2009 law could fix it and that law required a sentence of no more than forty years." In support of this argument, defendant relies in part on State v. Craig , 340 So.2d 191 (La. 1976), wherein the Louisiana Supreme Court held that the mandatory death sentence for aggravated rape was unconstitutional and that the appropriate remedy to correct this illegal sentence was to remand for resentencing to the most serious penalty for the next lesser responsive verdict.
This Court and other Louisiana courts have repeatedly rejected this argument. See State v. Francis , 17-651 (La. App. 5 Cir. 5/16/18), 247 So.3d 199, 203-204 ; State v. Jones , 15-157 (La. App. 5 Cir. 9/23/15), 176 So.3d 713, 719-720 ; State v. Lewis , 17-651 (La. App. 4 Cir. 4/18/18), 244 So.3d 527, 532 ; State v. Plater , 51,338 (La. App. 2 Cir. 5/17/17), 222 So.3d 897, 901, writ denied , 17-1190 (La. 5/11/18), 241 So.3d 1013. In accordance with this jurisprudence, we reject defendant's argument here.
Second, defendant argues La. C.Cr.P. art. 878.1(B)(2)(a) and La. R.S. 15:574.4(G) violate the ex post facto clause and the doctrine of separation of powers. Defendant did not raise this separation of powers argument below in his motion to reconsider sentence, and so he is precluded from raising it now on appeal in accordance with La. C.Cr.P. art. 881.1(E), which provides:
Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
In defendant's ex post facto argument, he argues that La. R.S. 15:574.4(G) violates the ex post facto prohibition because it retroactively changes the penalty by imposing a minimum sentence of twenty-five years that did not exist in 2009.
*581 The Louisiana Supreme Court has observed that "the linchpin inquiry in determining whether a statute violates the state Ex Post Facto Clause is whether the change alters the definition of criminal conduct or increases the penalty." State v. Holloway , 15-1233 (La. 10/19/16), 217 So.3d 343, 348 (citation omitted).
The law in effect at the time of defendant's offense mandated a minimum sentence of life imprisonment without the benefit of parole. The law no longer mandates such a sentence, but now allows for the benefit of parole. This change did not alter the definition of the crime of second degree murder, and certainly did not increase the penalty, but permits a more lenient penalty. Defendant's ex post facto claim is therefore without merit.
Lastly, defendant argues his sentence is unconstitutionally excessive. Both the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive and cruel punishment. State v. Lawson , 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 622, writ denied , 05-0244 (La. 12/9/05), 916 So.2d 1048. A sentence is considered excessive, even when it is within the applicable statutory range, if it is grossly disproportionate to the seriousness of the offense or imposes needless and purposeless pain and suffering. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice. State v. Payne , 10-46 (La. App. 5 Cir. 1/25/11), 59 So.3d 1287, 1294, writ denied , 11-0387 (La. 9/16/11), 69 So.3d 1141. The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Berry , 08-151 (La. App. 5 Cir. 6/19/08), 989 So.2d 120, 131, writ denied , 08-1660 (La. 4/3/09), 6 So.3d 767.
For those offenders convicted of second degree murder in Louisiana, La. R.S. 14:30.1 mandates a sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. In 2012, the United States Supreme Court found unconstitutional state sentencing schemes that mandate life imprisonment without parole for offenders under the age of eighteen at the time they committed a homicide offense. See Miller , supra. This holding does not establish a categorical prohibition against life imprisonment without parole for juvenile homicide offenders; it simply requires a sentencing court consider an offender's youth and attendant characteristics as mitigating circumstances before deciding whether to impose the harshest penalty for juveniles convicted of a homicide offense. See State v. Williams , 12-1766 (La. 3/8/13), 108 So.3d 1169. As the Miller Court stated: "[W]e require [a sentencing court] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Miller , supra at 2469.
As a juvenile homicide offender, defendant received the mandatory minimum sentence of life with the benefit of parole. A mandatory minimum sentence may be reviewed for constitutional excessiveness. State v. Tassin , 11-1144 (La. App. 5 Cir. 12/19/13), 129 So.3d 1235, 1265, writ denied , 14-0284 (La. 9/19/14), 148 So.3d 950. While a mandatory minimum sentence is presumed constitutional, this presumption may be rebutted if the defendant can show that he is exceptional. Id. This requires the defendant to demonstrate that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully *582 tailored to the culpability of the offender, the gravity of the offense, and the circumstances. Id.
We do not find that defendant has demonstrated his case is exceptional such that he is entitled to a downward departure from the mandatory minimum sentence. In fact, in other Miller cases involving juvenile defendants convicted of second degree murder, the defendants received the maximum sentence of life without parole. See State v. Davis , 15-118 (La. App. 5 Cir. 6/30/15), 171 So.3d 1223 (defendant convicted of four counts of second degree murder, including two juvenile victims); State v. Smoot , 13-453 (La. App. 5 Cir. 1/15/14), 134 So.3d 1, writ denied , 14-0297 (La. 9/12/14), 147 So.3d 704 (defendant convicted of second degree murder for shooting an elderly, homeless, HIV-positive drug addict, multiple times over a stereo); State v. Wilson , 14-1267 (La. App. 4 Cir. 4/29/15), 165 So.3d 1150 (defendant convicted of second degree murder for shooting the victim multiple times during a carjacking); State v. Fletcher , 49,303 (La. App. 2 Cir. 10/1/14), 149 So.3d 934, writ denied , 14-2205 (La. 6/5/15), 171 So.3d 945, cert. denied , --- U.S. ----, 136 S.Ct. 254, 193 L.Ed.2d 189 (2015) (defendant convicted of two counts of second degree murder for shooting both of his parents in their faces); State v. Brooks , 49,033 (La. App. 2 Cir. 5/7/14), 139 So.3d 571, writ denied , 14-1194 (La. 2/13/15), 159 So.3d 459 (defendant convicted of second degree murder for participating in a gunfight which resulted in the death of an innocent juvenile bystander). Although the facts of defendant's crime indicate premeditated murder, defendant nevertheless received the mandatory minimum sentence. We find no abuse of the district court's broad sentencing discretion in imposing this sentence.
This assignment of error is without merit.
ERRORS PATENT
The record has been reviewed for errors patent in accordance with La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5 Cir. 1990). Our review reveals two errors requiring corrective action.
First, the State of Louisiana Uniform Commitment Order reflects that defendant received a life sentence, but does not specify that defendant's sentence includes the benefit of parole. For purposes of maintaining the accuracy and completeness of the record, this matter is remanded to the district court with the instruction to correct the Uniform Commitment Order to reflect that defendant's life sentence is imposed with the benefit of parole. See State v. Lyons , 13-564 (La. App. 5 Cir. 1/31/14), 134 So.3d 36, 41, writ denied , 14-0481 (La. 11/7/14), 152 So.3d 170. The Clerk of Court for the 24th Judicial District Court is ordered to transmit the original of the corrected Uniform Commitment Order to the officer in charge of the institution to which defendant has been sentenced and to the Department of Corrections' legal department. See State v. Stewart , 17-297 (La. App. 5 Cir. 11/29/17), 232 So.3d 1284, 1285, 1290.
And second, the sentencing minute entry provides that defendant was advised that he had two years after his conviction and sentence became final to seek post-conviction relief, yet the sentencing transcript indicates that defendant was incompletely advised that he had two years after only his sentence became final to seek post-conviction relief. This Court has noted this previously on error patent review. See State v. Oliver , 14-428 (La. App. 5 Cir. 11/25/14), 165 So.3d 970, 978, writ denied , 14-2693 (La. 10/9/15), 178 So.3d 1001.
*583 If a trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. Accordingly, by way of this opinion, defendant is hereby advised that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.
DECREE
For the foregoing reasons, defendant's conviction and sentence are affirmed, and the matter is remand for correction of the State of Louisiana Uniform Commitment Order.
CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR CORRECTION OF UNIFORM COMMITMENT ORDER

Rickell London gave two taped statements to Detective Rodrigue on May 14, 2009 that were not introduced into evidence.

Although at sentencing the district court neglected to specify that defendant's sentence was to be served "at hard labor," corrective action is not required as the commitment reflects that defendant's sentence is at hard labor. See State v. Wilson , 15-418 (La. App. 5 Cir. 11/19/15), 179 So.3d 903, 907 n.8 ("[W]hen hard labor is a mandatory requirement of the sentence, the trial judge's failure to impose hard labor on the record is not an error requiring corrective action if the commitment includes the hard labor requirement.").

By operation of La. C.Cr.P. art. 916(3), the district court retained jurisdiction to rule on relator's motion for reconsideration of sentence.

Acts 2010, No. 438, § 1.