ROBERT A. CHAISSON, Judge.
| gDefendant, Cody Smoot, appeals his conviction and sentence for second degree murder. For the reasons that follow, we affirm defendant’s conviction and his sentence of life imprisonment without benefit of parole, probation, or suspension.

PROCEDURAL HISTORY

On August 25, 2011, a Jefferson Parish Grand Jury returned an indictment, charging defendant with the second degree murder of Johnny Ferrell in violation of LSA-R.S. 14:30.1. At his arraignment held on August 30, 2011, defendant pled not guilty. The matter thereafter proceeded to trial before a 12-person jury on January 23 and 24, 2013. After considering the evidence presented, the jury unanimously found defendant guilty as charged.
On January 31, 2013, the trial court sentenced defendant to life imprisonment without benefit of parole, probation, or suspension of sentence. Defendant then filed a motion to reconsider sentence, in which he requested that |shis sentence be amended to afford him the opportunity to receive parole. On February 4, 2013, the trial court denied defendant’s motion. Defendant now appeals.

FACTS

Benny Ferrell and his brother Johnny, the victim in this case, had been homeless for most of their lives and were both users of crack cocaine. In March of 2011, Benny had taken up residence in a shed behind his nephew’s house. However, Johnny was not allowed to stay there because he was a nuisance in the neighborhood, often begging for money.
In the early morning hours of March 29, 2011, Johnny appeared at his brother’s shed with a companion. Johnny asked Benny if he could sell his boombox in order to get money to purchase crack cocaine. After Benny refused his brother’s request, Johnny took the boombox from the shed and told Benny that his companion would give him a “dime rock” for it. Again, Benny refused to sell his boombox, and he put it back in the shed. Johnny’s companion then began to walk off and told Johnny to “come on” in a loud, angry voice. Johnny and his companion left, and Benny returned to the shed to get some rest. Within a few minutes, Benny heard several gunshots in the area. Fearing that his brother was involved, he ran to the corner, but did not see anything. Benny returned to the shed and went to sleep.
At approximately 7:00 a.m. on March 29, 2011, Officer Paul Dupuis of the Jefferson Parish Sheriffs Office was on routine patrol when he was flagged down by Eddie Deamer, who informed him that a “man was down” farther up the street. Officer Dupuis continued up the street and observed a dead body on the ground near the sidewalk in front of an empty lot located just around the corner from Benny’s shed. Officer Dupuis advised headquarters and secured the scene.
14Detective Matthew Vazquez of the Jefferson Parish Sheriffs Office arrived on the scene and found five .40 caliber Winchester casings and a projectile fragment in the vicinity of the victim’s body, as well as a projectile under the victim’s body.[1] *3 In addition, he and Detective Rhonda Goff, the lead investigator, encountered Benny who, by this time, had arrived on the scene having been alerted that his brother had been shot. Benny, who was visibly upset about his brother’s death, agreed to go to the detective bureau to give a statement to the police.
In connection with his statement, Benny described the person he last saw with his brother. A composite sketch was produced and distributed to the- police districts. Detective Goff received leads concerning two different individuals, and she prepared two separate photographic lineups. When she presented these lineups to Benny, he advised her that the individual who was with his brother the morning of the shooting was not in the lineups. Thereafter, a fellow officer saw the sketch and commented that it looked like Cody Smoot. Detective Goff compiled another photographic lineup, which contained defendant’s picture, and presented it to Benny on March 31, 2011. From this third photographic lineup, Benny positively identified defendant as his brother’s companion in the early morning hours of March 29, 2011.
After this positive identification, Detective Goff obtained a search warrant for defendant’s last known address, and on April 12, 2011, officers searched that residence. In addition, she obtained a search warrant for a white Pontiac Grand Prix, which was parked outside the residence at the time of the search. The vehicle was towed back to the detective’s bureau and searched pursuant to the warrant.
| ¿Defendant was subsequently taken into custody and transported to the detective bureau for questioning. After being advised of his rights and executing a waiver of rights form, defendant gave a recorded statement. In his statement, defendant admitted ownership of some of the items found during execution of the search warrants, including the crack cocaine, the 9 mm round of ammunition, the .40 caliber rounds of ammunition, and a Glock magazine. He admitted that he intended to sell the crack, and he explained that the Grand Prix belonged to his sister, but that he had been using it for the past three or four days.
Defendant further explained that the victim was his parran, who “smoked a lot of crack” and that he had last seen him several months earlier on January 21, 2011. He said he learned of the victim’s death around 7:00 a.m. on March 29, 2011, while at his grandfather’s house on Lloyd Price Avenue. He explained he was asleep with his girlfriend Joanna Miller when he was awakened by a phone call from his cousin, Rynell Allen, informing him that the victim had been killed and to watch the news.
The detectives subsequently investigated Rynell Allen, but were unable to locate any such person. The detectives also spoke with Joanna Miller, who informed them that she was working at a McDonald’s restaurant near Zephyr Field on Airline Drive that evening, that she left work around 1:00 a.m. on March 29, 2011, and that she met defendant at his grandfather’s house, where they spent the night. However, Detective Goff spoke with the manager of that McDonald’s, who informed the detective that a person by that name had never worked there. When Detective Goff confronted Ms. Miller with this information, she explained she made a mistake because she was scared, but had actually been working at the McDonald’s on Claiborne Avenue and Louisiana Avenue in Orleans Parish. Detective Goff determined that Ms. Miller had been fired from 1 fithis McDonald’s on March 17, 2011, twelve days before the murder. Subsequently, at trial, Ms. Miller explained that *4 she was untruthful with the police because she was scared and did not want to get involved.
At trial, Ms. Miller testified that at around 1:00 a.m. that same morning, she received a telephone call from defendant, her boyfriend, who asked her to pick him up. Ms. Miller drove and picked defendant up from a trailer park near the Mark Twain apartment complex. When defendant got into the car, Ms. Miller observed that he was out of breath, “agitated, sweaty, and just didn’t want to be bothered.” Ms. Miller asked defendant what had happened; defendant initially did not respond, but then explained that he had shot someone.
Defendant then directed Ms. Miller to drive to her grandmother’s house on Simon Street, which was uninhabited and abandoned due to a fire. When they arrived, defendant exited the car and proceeded to the back of the house and returned to the car after a few minutes. Defendant then directed Ms. Miller to go to her parents’ house. When they arrived, the couple retreated to her bedroom, where Joanna’s mother discovered defendant the next morning. Ms. Miller testified that she did not observe defendant with a gun that night, but acknowledged that she has seen him with a “big and bulky” gun[2] in the past.

DENIAL OF MOTION TO RECONSIDER SENTENCE

In defendant’s first assignment of error, he challenges the trial court’s denial of his motion to reconsider sentence.
Subsequent to the imposition of his life sentence without benefit of probation, parole, or suspension, defendant filed a motion to reconsider sentence. In his motion, defendant requested that the court amend his sentence to afford him |7an opportunity to receive parole, in light of the principles set forth in Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). Defendant specifically asserted that on account of his youth[3] and his troubled childhood, he was entitled to a sentence with an opportunity for parole. The trial court denied this motion. On appeal, defendant argues that the trial court erred in denying his motion to reconsider sentence because his sentencing hearing was inadequate under Miller, and the crime was not particularly heinous. We find no merit to defendant’s arguments.
In Miller v. Alabama, 132 S.Ct. at 2469, the United States Supreme Court ruled that “the Eighth Amendment forbids a sentencing scheme that mandates life in prison -without possibility of parole for juvenile offenders” convicted of homicide. The Miller court did not, however, establish a categorical prohibition against life without parole for juveniles. Rather, the court required that a sentencing court consider an offender’s youth and attendant characteristics as mitigating circumstances before deciding whether to impose the harshest possible penalty for juveniles. State v. Williams, 12-1766 (La.3/8/13), 108 So.3d 1169 (per curiam). In Miller, the United States Supreme Court stated, “Although we do not foreclose a sentencer’s ability to make that judgment in homicide *5 cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.” Miller at 2469.
In State v. Brown, 12-0872 (La. 5/7/13), 118 So.3d 382, 335, the Louisiana Supreme Court acknowledged that “the Miller holding permits the imposition of a life sentence without parole but only after an opportunity to consider mitigating circumstances.” In light of Miller, the legislature, during the 2013 Regular |sSession, enacted LSA-C.Cr.P. art. 878.1, allowing parole consideration for juveniles sentenced to life imprisonment for certain homicide offenses after a sentencing hearing. That article, which became effective August 1, 2013, provides as follows:
A. In any case where an offender is to be sentenced to life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense, a hearing shall be conducted prior to sentencing to determine whether the sentence shall be imposed with or without parole eligibility pursuant to the provisions of R.S. 15:574.4(E).
B. At the hearing, the prosecution and defense shall be allowed to introduce any aggravating and mitigating evidence that is relevant to the charged offense or the character of the offender, including but not limited to the facts and circumstances of the crime, the criminal history of the offender, the offender’s level of family support, social history, and such other factors as the court may deem relevant. Sentences imposed without parole eligibility should normally be reserved for the worst offenders and the worst cases.
In cases where a juvenile homicide offender received a life sentence without parole and the sentencing court did not consider mitigating circumstances before imposing the sentence, the Louisiana Supreme Court has remanded the matter to the trial court to reconsider the sentence after conducting a new sentencing hearing in conformity with Miller. See State v. Williams, supra; State ex rel. Landry v. State, 11-0796 (La.1/18/13), 106 So.3d 106; State v. Graham, 11-2260 (La.10/12/12), 99 So.3d 28; and State v. Simmons, 11-1810 (La.10/12/12), 99 So.3d 28; see also State v. Davis, 12-512 (La.App. 5 Cir. 4/24/13), 115 So.3d 68, 86, writ denied, 13-1205 (La.11/22/13), 126 So.3d 479 (where this Court vacated the portion of the sentence that eliminated parole eligibility and remanded the matter for the trial court to resentence the defendant in conformity with Miller ).[4]
|nIn the instant case, the trial court clearly complied with the sentencing directives set forth in Miller v. Alabama, supra. At the sentencing hearing conducted on January 31, 2013, defendant argued that he should be allowed parole eligibility pursuant to the principles set forth in Miller. Citing studies about the intellectual ability, psychological development, and reasoning processes of adolescents, defense counsel suggested to the court that defendant, who was 17 at the time of the crime, “did not possess the full reasoning capabilities of an adult in his early twenties; that he would have been more prone to be influenced by risk taking and sensation thinking.” Defense counsel then advised the court that defendant *6 came from a broken home; that he was raised primarily by his grandfather; that between the ages of 12 and 15, defendant was placed in group homes and Boys Town; and that during that three-year time period, he was treated by psychiatrists, psychologists, and counselors. Defense counsel then asked the court to take these factors into consideration and fashion a sentence that would afford defendant at least the opportunity for parole.
The State then articulated that it took no position as to senténcing; however, the prosecutor then discussed the principles of Miller and reviewed the factors set forth in LSA-C.Cr.P. arts. 894.1 and 905.5 that should be taken into consideration in the imposition of sentence. In particular, the State noted that “this was an elderly victim, who had HIV, who was homeless, was crack addicted, and was shot multiple times, in the front and in the back.” The State stressed that a firearm was used, that the murder occurred as a result of defendant’s involvement in the drug trade, and that a sentence of life with parole would deprecate the seriousness of the matter. The State also informed the trial judge that defendant was presently serving a sentence for his conviction for possession with intent to distribute cocaine. In addition, defendant has a prior arrest for second degree murder, but the 1 incharge was refused because the witnesses failed to come forward to testify. The State also discussed the mitigating factors and found the only applicable one under the circumstances of this case to be the youth of the offender. In discussing this factor, the State stressed that defendant was 17 years old at the time of the offense and noted that under Louisiana law, a 17-year-old can receive adult consequences.
After hearing extensive argument from both sides, the trial court articulated its considerations before imposing sentence, specifically noting that it had read Miller and the other applicable cases. The trial court stated that it had taken into account the youth of defendant as well as his upbringing and previous criminal activity. Despite defendant’s youth, the court found that defendant preyed upon a particularly vulnerable individual who was a homeless, HIV positive drug addict.[5] Further, the court also expressed astonishment that defendant shot this victim multiple times over a stereo.
The court then meticulously considered the sentencing guidelines as provided in LSA-C.Cr.P. art. 894.1. From the fact that a bullet was located underneath the victim’s body, the court reasoned that defendant had shot the victim while he was incapacitated on the ground, shooting him “like a dog.” The court found this conduct demonstrated that defendant had “so little value [for] life” and exhibited a deliberate cruelty to the victim. Finally, the court contemplated the statutory mitigating circumstances for capital sentencing as provided in LSA-C.Cr.P. art. 905.5, finding no applicable circumstances other than defendant’s youth.
In the instant case, it is clear that the trial court complied with the principles set forth in Miller prior to imposing sentence. He considered mitigating factors and particularly took defendant’s youth into account before imposing a sentence of Inlife imprisonment without benefit of parole. Accordingly, we find no error in the trial court’s denial of defendant’s motion to reconsider sentence. The arguments raised *7 by defendant in this assigned error are without merit.

RIGHT TO PRESENT A DEFENSE

In his second assigned error, defendant contends that the trial court denied him his constitutional right to present a defense.
At a pre-trial hearing, the State made an oral motion in limine seeking to exclude any reference to an anonymous call made to Crime Stoppers that claimed Benny Ferrell was the perpetrator of the crime.[6] At the hearing, the State asserted this evidence was inadmissible hearsay. The defense responded that it was admissible as a res gestae exception to the hearsay rule because it was part of the police investigation. The court granted the State’s motion over the defense’s objection.
On appeal, defendant challenges this ruling. He claims that this evidence, even if it was hearsay, should have been admitted pursuant to the “fairness exception,” i.e., because it was reliable and necessary to his defense.
Initially, as noted by the State, defendant did not raise in the trial court the argument he now raises on appeal. Here, defendant argues that the evidence is admissible pursuant to the “fairness exception,” whereas in the trial court, defendant argued the evidence was admissible pursuant to the res gestae exception. A defendant is limited to the grounds for objection that he articulated in the trial court, and a new basis for the objection may not be raised for the first time on appeal. State v. Alvarez, 10-925 (La.App. 5 Cir. 6/29/11), 71 So.3d 1079, 1085. Accordingly, this particular argument was not properly preserved for appellate review. In any event, defendant’s argument on appeal, that this evidence should have been admitted pursuant to the “fairness exception,” is without merit.
Both the Sixth Amendment of the United States Constitution and Article I, Section 16 of the Louisiana Constitution guarantee a criminal defendant the right to present a defense. State v. Lirette, 11-1167 (La.App. 5 Cir. 6/28/12), 102 So.3d 801, 813, writ denied, 12-1694 (La.2/22/13), 108 So.3d 763. This fundamental right may not be superseded by evidentiary rules. State v. Van Winkle, 94-0947 (La.6/30/95), 658 So.2d 198, 202.
Hearsay is “a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” LSA-C.E. art. 801(C). Hearsay is not admissible except as otherwise provided by the Louisiana Code of Evidence or other legislation. LSA-C.E. art. 802.
The Louisiana Supreme Court has recognized that normally inadmissible hearsay may be admitted into evidence if it is reliable, trustworthy, and relevant, and if to exclude it would compromise the defendant’s right to present a defense. State v. Van Winkle, 658 So.2d at 202. However, the Supreme Court has noted that this “fairness exception” to the hearsay rule is unusual and should be sparingly applied. State v. Trahan, 576 So.2d 1, 11 (La.1990). Moreover, the right to present a defense does not require the trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. State v. Franklin, 11-216 (La. *8 App. 5 Cir. 12/28/11), 87 So.3d 860, 880, writ denied,, 12-0387 (La.9/12/12), 98 So.3d 811.
On appeal, defendant relies on State v. Gremillion, 542 So.2d 1074 (La.1989) in support of his argument that the anonymous tip was erroneously excluded. [ isln Gremillion, the defendant, who had been convicted of manslaughter, argued on writs to the Louisiana Supreme Court that the trial court erred in excluding the victim’s statement to a police officer while in the hospital before his death. In the victim’s statement, he described his attackers as “three white males.” When the police officer who interviewed the victim took the stand, the defense tried to elicit this statement from the officer, but was met with hearsay objections from the State, which were sustained by the trial court.
The Louisiana Supreme Court reversed the trial court, finding that although the statement was hearsay and did not fit into any of the recognized hearsay exceptions, it should have been admitted due to its reliability and trustworthy nature. In making this ruling, the court considered that the statement was corroborated by the victim’s statement to the admitting physician. In addition, the defendant and the victim were close friends, yet in two separate statements the victim failed to identify the defendant as his attacker. Lastly, the court noted there were no circumstances to suggest that the statement was untrustworthy.
The instant case is clearly distinguishable from the Gremillion case relied upon by defendant to support his argument that the anonymous tip should have been admitted. In this case, there were no circumstances presented to suggest that this hearsay evidence was reliable and trustworthy. The declarant of the tip was anonymous and there was no evidence that corroborated the tip. In fact, the evidence adduced at trial contradicts the tip, indicating defendant was the perpetrator.
Benny Ferrell testified that he saw defendant with the victim moments before he was shot and that defendant appeared angry. Soon after the shooting, Joanna Miller testified that she received a call from defendant, picked him up not far from the murder scene, and he admitted to her that he had shot someone. In [ ^addition, Ms. Miller’s testimony was corroborated by cell phone records. The custodian for Sprint Nextel testified that several calls between defendant’s cell phone and Joanna Miller’s cell phone were exchanged between 1:15 a.m. and 1:28 a.m. on March 29, 2011.
In this case, the evidence does not fit within the “fairness exception” to the hearsay rule as there were no circumstances presented to suggest that this hearsay evidence was reliable or trustworthy. In addition, there is nothing to indicate that the exclusion of this evidence hampered defendant’s right to present a defense. Accordingly, we find that the trial court did not abuse its discretion in excluding evidence of the anonymous tip.[7] This assigned error is without merit.

ERRORS PATENT REVIEW

We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no errors that require corrective action.
*9 Accordingly, for the reasons set forth herein, we affirm defendant’s second degree murder conviction and sentence.

AFFIRMED.

. At trial, Dr. Susan Garcia, a forensic pathologist, testified that she performed an autopsy on the victim and determined that the manner of death was homicide and that the cause of death was multiple gunshot wounds. In addition, Deputy Jene Rauch, an expert in the field of firearm and tool mark examination, testified that the four projectiles recovered from the victim's body and the projectile recovered from under the victim's body were .40 caliber and were fired from the same weapon.

. At trial, Deputy Jene Rauch testified that the projectiles recovered from the victim’s body exhibited signs consistent with having been fired from a hi-point firearm, which she described as "usually pretty big and bulky ... a real heavy gun.”

. Defendant’s date of birth is January 21, 1994. Therefore, at the time of the offense, March 29, 2011, defendant was 17 years of age.

. Cf. State v. Tate, 12-2763 (La.l 1/5/13), 130 So.3d 829, in which the Louisiana Supreme Court held that Miller v. Alabama, supra, does not apply retroactively in state cases on collateral review.

. Although the trial court specifies that the victim was HIV positive, this fact was not confirmed by any evidence.

. At trial, Detective Goff testified that Benny Ferrell was investigated and was cleared as a suspect in this case.

. A trial judge's determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion. State v. Franklin, 87 So.3d at 880.