McCALLUM, J.
Breonne Whitaker was convicted of second degree murder for the shooting death of Frederick Henderson. Whitaker, who was 17 years old at the time of the murder, was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. He now appeals that sentence. Because of the mandates of the respective Supreme Courts of the United States and Louisiana and those of the legislature of Louisiana ( La. C. Cr. P. art. 878.1 ), we are required to allow the trial judge an opportunity *528 to conduct a hearing to articulate her reasons for sentencing.
FACTS
In the early morning hours of September 11, 2013, Shreveport Police Department officers responded to what they thought was a single-vehicle accident involving a GMC Envoy which had struck a utility pole on Hollywood Avenue in Shreveport. Frederick Henderson, the unrestrained driver, was the lone occupant of the vehicle. Although Henderson was sitting in the driver's seat, his upper body was slumped over into the front passenger area. Henderson, whose basketball shorts were pulled down to his mid-thigh, was not breathing and had no pulse. After paramedics began working on Henderson, they discovered that he had suffered a single gunshot wound.
When detectives spoke with Henderson's family, they learned that Henderson was gay and that some time ago he had been involved in an altercation with a male on Kent Avenue during which his earring was torn from his ear. Kent, which intersects with Hollywood, was about a block away from where the Envoy hit the utility pole. The detectives later determined that Henderson had been shot near a business at the intersection of Hollywood and Kent.
A gray purse containing two cell phones was found in the vehicle. Detectives were able to obtain access to the contents of the phones. They noticed several missed calls and that a call from 318-779-1507 came in shortly before the accident was reported. Detectives also noticed that one of the last Facebook messages received by Henderson was from Whitaker. This message, which left the 318-779-1507 number, stated that Whitaker had been trying to call Henderson, but the calls were going straight to voice mail.
Detectives then went to Whitaker's home on Kent Street where they found Whitaker asleep on a couch. Before the detectives had a chance to explain their presence, Whitaker asked if the police were there about that "punk." Whitaker first told the detectives that his friend Isiah Childs had shot a "punk." After the detectives let Whitaker know that they were aware of the prior altercation with Henderson, he admitted to them that he knew the victim. He also told them that the first time that he encountered Henderson was when he caught him engaging in oral sex with Childs in his backyard. Henderson's earring was snatched during the ensuing scuffle. Whitaker told the detectives that he fired a gun at Henderson because Henderson had been following him and trying to get him into his car, and that he was scared because he had been raped when he was younger.
Whitaker led the detectives to a gun hidden beneath a blanket in a shed behind a nearby residence. The recovered gun was a Stallard Arms JS 9mm pistol. Whitaker also showed the police where a magazine was located in a garbage can. The magazine contained four 9mm cartridges.
Whitaker eventually told the detectives that Henderson was going to take him to visit a girl that Henderson knew, but those plans were abandoned because the girl's boyfriend was home. Henderson then drove Whitaker to an area near Mall St. Vincent in Shreveport, where Whitaker allowed Henderson to perform oral sex on him in the vehicle in exchange for $ 50. Whitaker also agreed to engage in sexual intercourse with Henderson, but was unable to complete the act. Whitaker claimed that when they returned to Kent, Henderson grabbed his shirt as he exited the vehicle. Whitaker then fired one shot at Henderson and ran away. He added that he returned when he heard the Envoy *529 crash into the utility pole before running away again toward his home.
Whitaker was arrested and subsequently indicted for second degree murder. A jury trial before Judge Ramona Emanuel began in December of 2015. The jury heard testimony from Shreveport Police Department patrol officers, homicide detectives, crime scene investigators, and a DNA analyst regarding their investigation of the murder.
Dr. James Traylor, a forensic pathologist at LSUHSC-Shreveport, testified that the cause of Henderson's death was blood loss from the gunshot. The bullet entered Henderson's upper right arm and then continued into his chest. The bullet traveled left to right, top to bottom, and slightly from front to back. Dr. Traylor did not find any evidence of blunt force trauma, and any injuries he observed were from the gunshot. A single 9mm bullet was recovered from Henderson.
Christopher Davis, a forensic scientist at the North Louisiana Crime Lab, testified that a bullet test-fired from the recovered gun had the same class characteristics as the bullet recovered from Henderson. He could not conclude that the recovered bullet was fired from that specific gun because it did not make sufficient individual markings on a fired bullet in order for him to do further comparison. Nonetheless, he could not exclude the gun as having fired the bullet that was found.
As noted earlier, Whitaker originally told detectives that his friend Isiah Childs had shot Henderson. Childs happened to be in a youth challenge program in Minden at the time of the shooting. Childs testified about what happened on the date that Whitaker tore the earring out of Henderson's ear. Childs explained that he was at Whitaker's house when they took several photos of Whitaker and texted them to various numbers using Childs's phone. A "Frederica" replied, and Whitaker told Childs that "Frederica" was coming to the house to meet him. When "Frederica" arrived, Childs thought that "Frederica" was, in fact, a man. Childs left momentarily. Upon returning, he saw "Frederica" run next door while screaming for help. Childs thought the incident was humorous because Whitaker had been "played." Childs denied ever having sex with another male at Whitaker's home.
Crystal Feaster, who has a child with Whitaker, testified that she knew Henderson from a party they had attended and that he often dressed as a woman. She recalled one occasion when Henderson drove past as she and Whitaker were walking down her street. Whitaker asked her if she knew Henderson, and then he said that he will "get some money from the faggot." This happened about a month before Henderson was killed.
Pamela Horton testified that Henderson was her only son. He was 23 years old when he was murdered. Horton stated that Henderson helped care for a sister who has cerebral palsy as well as for an elderly great-aunt.
On December 10, 2015, Whitaker was convicted of second degree murder. The verdict was unanimous. On December 30, Judge Emanuel, without additional comment, sentenced him to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
Post-trial proceedings
On December 18, 2015, Whitaker filed a motion for post-verdict judgment of acquittal.
On January 25, 2016, Whitaker filed a motion to reconsider and vacate what he alleged was an unconstitutionally excessive sentence. On April 29, 2016, Whitaker filed a motion to correct his allegedly illegal sentence under *530 Miller v. Alabama , 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).
On July 25, 2016, Whitaker filed a pro-se motion for new trial. The trial court denied this motion on September 14, 2016.
On September 21, 2016, Whitaker filed a motion for appeal. Sufficiency of the evidence was not raised as an assignment of error. This Court recognized that the district court failed to rule on Whitaker's motion for a post-verdict judgment of acquittal prior to sentencing him. Accordingly, this Court vacated Whitaker's sentence, dismissed his appeal, and remanded this matter to the trial court. State v. Whitaker , 51,632 (La. App. 2 Cir. 5/25/17), 225 So.3d 524.
On August 16, 2017, Whitaker filed: (1) a motion for production of favorable evidence relating to punishment; (2) a motion to require the State to provide presentencing notice of intent to seek a sentence of life without parole and to provide notice of the aggravating factors it intended to rely on in support of this sentence; and (3) a motion to preclude the prosecution from seeking a sentence of life without parole because, as a matter of law, second degree murder is not the worst offense. An unstamped motion for a reliable sentencing hearing as required by law was also filed by Whitaker.
On October 27, 2017, the State filed notice of its intent to seek a life sentence without the possibility of parole under La. C. Cr. P. art. 878.1(B).
On December 18, 2017, Whitaker's attorney filed a motion to appoint a sanity commission. Dr. Todd Lobrano concluded that Whitaker was competent to proceed to trial and, at the time of the offense, was able to distinguish between the right and wrong of his alleged behavior. Doctors Erika Parker and Marc Colon together concluded that Whitaker has a rational and factual understanding of the nature of the proceedings against him. They also opined that he could appropriately assist his attorney in his defense, and an additional exam and report would be necessary if a further opinion on Whitaker's sanity at the time of the offense was requested by the court.
On April 3, 2018, Judge Emanuel found Whitaker competent to proceed to sentencing. A resentencing hearing was held before Judge Emanuel on April 23, 2018. The State called Detective Rod Demery as its first witness. Demery recounted how he first met Whitaker in 2010 when Whitaker was charged with manslaughter after he struck a 50-year-old man, which caused the man to fall back and strike his head on the pavement. The man later died from his injuries. Demery also testified regarding his investigation of Whitaker in connection with Henderson's murder, and that Whitaker did not express remorse during his interview. Demery also recalled that Whitaker referred to Henderson as a "punk" during questioning. Demery commented that "punk" is a derogatory street term for a homosexual male.
The State next called Henderson's mother, Pamela Horton. Henderson, who lived with his mother, was 23 years old when he was killed. Horton testified how Henderson, her only son, had helped her by caring for his handicapped sister as well as for an elderly great-aunt. Henderson did not work, but received an allowance for helping to provide this care. Following Henderson's murder, the daughter was placed in adult day care and the aunt went into a nursing home. Horton testified that family gatherings are no longer the same, and that her other daughters no longer want to come over to her home as often as they once did. She urged the court not to let the system fail anyone else like it did for her. She also added that *531 she has had to endure testimony referring to her son as a "punk."
The State introduced Whitaker's jail records from the Louisiana State Penitentiary at Angola and Caddo Correctional Center dating back to his arrest for the current crime. The records are replete with disciplinary actions for fighting, refusing to comply with orders, and violating rules. There were also numerous instances when an inmate requested to be separated from Whitaker and other inmates.
The State also introduced Whitaker's juvenile record. Whitaker was born on January 26, 1996. He was adjudicated delinquent in 2009 for two separate crimes. In 2010, he was adjudicated on the manslaughter charge.
Whitaker was the only witness called by the defense. He testified that he attended school only through the ninth grade because he was incarcerated. He studied for his GED while serving time for the manslaughter conviction, but was released before he could be tested. Whitaker recounted how he went to the Gingerbread House for counseling after he was molested by two boys in their late teens when he was 8 years old.
Regarding his manslaughter conviction, Whitaker explained that he was walking with his pregnant girlfriend when the victim bumped him and challenged him to a fight. He claimed that after the man punched him in the face, he hit the man, which caused the man to fall and hit his head on the ground. Whitaker left the scene because he thought the man was only unconscious. Whitaker served two to three years for the manslaughter conviction before obtaining early release for good behavior. He was free for less than a year before he killed Henderson.
Whitaker also testified about what happened when he first met Henderson and what had occurred leading up to the murder. He asserted that the "accident" occurred when Henderson grabbed his shirt while he was getting out of the vehicle, and that he was trying to scare Henderson, not shoot him. Whitaker admitted that Henderson never threatened him. Whitaker thought what he did to Henderson was wrong and apologized to his family.
The State argued at the April 23 hearing that: (1) Whitaker's disciplinary record in jail was extensive and included numerous fights; (2) if Whitaker had committed his earlier offenses when 17 or older, the murder of Henderson would have made him a fourth felony offender; (3) Whitaker equivocated about the facts surrounding the murder; (4) Whitaker showed no redeemable qualities; (5) Whitaker consistently engaged in criminal activity and was out of juvenile custody for only six months following the manslaughter when he killed Henderson; and (6) Whitaker's history was egregious, he killed two people, and this was one of the rare circumstances when a 17-year-old should spend the rest of his life in jail. Defense counsel countered that: (1) they knew little about Whitaker's adult life and how he may change; (2) they asked for the opportunity for some future parole board to review his sentence; and (3) it would be a tragedy to close off the possibility of parole to a person who was so young.
Following the sentencing hearing, Judge Emanuel took the matter under advisement and scheduled resentencing for May 7. At the May 7 hearing, the attorneys agreed that the motion for a post-verdict judgment of acquittal had been denied. Judge Emanuel noted that she had heard the argument and testimony and had reviewed the sanity commission reports and all applicable law. She also referred to a PSI report, but immediately realized that one had not been ordered. Judge Emanuel *532 again sentenced Whitaker to life at hard labor without benefit of probation, parole, or suspension of sentence.
On May 22, 2018, Whitaker filed a motion to reconsider and vacate what he considered to be an unconstitutionally excessive sentence. On June 22, 2018, Whitaker filed a motion for appeal.
Whitaker's appellate counsel asserts that the trial court: (1) erred in failing to consider the motion to reconsider sentence and vacate the unconstitutionally excessive sentence; (2) erred in sentencing Whitaker to life imprisonment without benefit of parole, probation, or suspension of sentence; (3) failed to comply with the provisions of La. C. Cr. P. art. 878.1 ; and (4) erred in not sentencing the defendant to the appropriate sentence for manslaughter considering the sentencing scheme in effect at the time of the commission of the offense was unconstitutional.
Whitaker filed pro se assignments of errors asserting that: (1) his life sentence without parole violates his constitutional rights to due process and equal protection as a juvenile; and (2) a conflict between him and his court-appointed counsel while preparing for the resentencing hearing resulted in ineffective assistance of counsel.
DISCUSSION
We note from the outset that the trial court did not rule on Whitaker's motion to reconsider sentence filed after resentencing. However, the absence of a ruling on a motion to reconsider sentence does not affect this Court's ability to consider the constitutional excessiveness of a defendant's sentence on appeal. State v. Egan , 44,879 (La. App. 2 Cir. 12/9/09), 26 So.3d 938 ; La. C. Cr. P. arts. 881.1 and 916.
The offense of second degree murder is punishable by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:30.1. However, in Miller v. Alabama , supra , the United States Supreme Court held that the Eighth Amendment forbids mandatory life sentences without parole for juvenile offenders who commit homicides. Miller was premised upon Roper v. Simmons , 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), and Graham v. Florida , 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). In Roper , the Supreme Court held that the Eight Amendment barred the death penalty for juveniles. In Graham , the Supreme Court held that the Eight Amendment prohibited a sentence of life without the possibility of parole for a juvenile convicted of a non-homicide offense. In doing so, the Graham court likened a juvenile's life without parole sentence to the death penalty.
The Miller court acknowledged that " Roper and Graham establish[ed] that children are constitutionally different from adults for purposes of sentencing." Notably, "juveniles have diminished culpability and greater prospects for reform." Id ., 567 U.S. at 471, 132 S.Ct. at 2464.
The Miller court stated, with citations omitted:
We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment.... [G]iven all we have said in Roper , Graham , and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great *533 difficulty we noted in Roper and Graham of distinguishing at this early age between "the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.
Id ., 567 U.S. at 479-80, 132 S.Ct. at 2469.
Finally, the Miller court concluded by stating that " Graham , Roper , and our individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." Id ., 567 U.S. at 489, 132 S.Ct. at 2475.
The legislature of this state has also acted in this area of law. La. C. Cr. P. art. 878.1, which became effective on August 1, 2013, implemented the holding in Miller . This article states, in part:
B. (1) If an offender was indicted prior to August 1, 2017, for the crime of first degree murder ( R.S. 14:30 ) or second degree murder ( R.S. 14:30.1 ) where the offender was under the age of eighteen years at the time of the commission of the offense and a hearing was not held pursuant to this Article prior to August 1, 2017, to determine whether the offender's sentence should be imposed with or without parole eligibility, the district attorney may file a notice of intent to seek a sentence of life imprisonment without the possibility of parole within ninety days of August 1, 2017. If the district attorney timely files the notice of intent, a hearing shall be conducted to determine whether the sentence shall be imposed with or without parole eligibility.....
.....
C. At the hearing, the prosecution and defense shall be allowed to introduce any aggravating and mitigating evidence that is relevant to the charged offense or the character of the offender, including but not limited to the facts and circumstances of the crime, the criminal history of the offender, the offender's level of family support, social history, and such other factors as the court may deem relevant. The admissibility of expert witness testimony in these matters shall be governed by Chapter 7 of the Code of Evidence.
D. The sole purpose of the hearing is to determine whether the sentence shall be imposed with or without parole eligibility. The court shall state for the record the considerations taken into account and the factual basis for its determination. Sentences imposed without parole eligibility and determinations that an offender is not entitled to parole eligibility should normally be reserved for the worst offenders and the worst cases.
In State v. Fletcher , 49,303 (La. App. 2 Cir. 10/1/14), 149 So.3d 934, writ denied , 2014-2205 (La. 6/5/15), 171 So.3d 945, this Court dealt with an Article 878.1 resentencing hearing where the defendant was again sentenced to life without parole sentences. Addressing art. 878.1, this Court stated:
The Supreme Court plainly recognized that the circumstances of some murders and the characters of some juvenile killers would warrant the imposition of the "harshest possible penalty," and it gave the sentencer latitude to respond appropriately to those situations.
The Louisiana legislature promptly addressed the Miller directive against *534 mandatory life-without-parole sentences for juvenile killers by devising a sentencing procedure which would require that a trial court sentencing a youthful offender review all pertinent factors before determining whether parole eligibility was warranted. By its very application to only murderers under the age of 18, the provisions of La. C. Cr. P. art. 878.1 mandating a sentencing hearing at which the defense will be given an opportunity to present mitigating factors - which obviously include the defendant's age as an important part of his social history - satisfy Miller 's requirement that mitigating factors favoring a juvenile killer be heard in a proceeding held for that purpose. Furthermore, we find that Miller does not require deferral to the distant future of the determination of whether to allow parole eligibility.
State v. Fletcher , 49,303 at pp. 11-12, 149 So.3d at 942.
Fletcher was 15 years and 8 months old when he shot both of his parents in their faces with a shotgun, killing them instantly. Fletcher's 19 -year-old-sister witnessed the murder of their mother. Fletcher threatened to kill her as well and forced her to remain in her bedroom for the remainder of the night. She was able to escape when Fletcher went to school the next day.
Applying La. C. Cr. P. art. 878.1 and offering a survey of cases post-enactment of the article, this Court affirmed Fletcher's life without parole sentences. Significantly, this Court noted that the sentencing judge in Fletcher was the same judge who presided over the trial and was "intimately familiar" with the case. At the Miller hearing, the court heard testimony that Fletcher had a history of torturing animals, criminal activity, and violence, and he still expressed a desire to kill his sister. The court also heard testimony from a psychiatrist who opined that there was an increased risk of future violent behavior and that Fletcher suffered from antisocial personality disorder or psychopathy. Further, the sentencing judge provided thorough and well-considered reasons for sentencing, outlining the jurisprudence and factors considered. This Court ultimately concluded that the sentencing court precisely fulfilled this Court's directive to conduct a Miller hearing, to make a more specific and thorough review of the relevant factors, and to state its reasons for sentencing on the record.
In State v. Smoot , 13-453 (La. App. 5 Cir. 1/15/14), 134 So.3d 1, writ denied , 2014-0297 (La. 9/12/14), 147 So.3d 704, the Fifth Circuit found the trial court had complied with the Miller principles at a sentencing hearing which occurred before the enactment of art. 878.1. During the sentencing hearing, the district court stated that, in accordance with Miller , it considered the defendant's youth and previous criminal activity. The district court also took into account that the elderly victim, who was homeless as well an HIV-positive crack addict, was shot multiple times in the front and back by the juvenile defendant. It was also noted that the defendant was involved in the drug trade, had a prior conviction for possession with intent to distribute cocaine, and shot the victim over a stereo. The district court sentenced defendant to life imprisonment without benefit of parole, probation, or suspension of sentence.
In State v. Brooks , 47,394 (La. App. 2 Cir. 12/12/12), 108 So.3d 161 (" Brooks I "), writ denied , 2013-0080 (La. 5/31/13), 118 So.3d 393, this Court affirmed the second degree murder conviction of a juvenile defendant who participated in a "senseless gunfight" which resulted in the death of an innocent bystander. However, we vacated the mandatory sentence of life imprisonment *535 at hard labor without benefits, and we remanded the case to the trial court for resentencing in light of Miller . Following a sentencing hearing conducted pursuant to art. 878.1, the trial court again imposed a sentence of life imprisonment without parole and the defendant again appealed his sentence. In State v. Brooks , 49,033 (La. App. 2 Cir. 5/7/14), 139 So.3d 571 (" Brooks II "), writ denied , 2014-1194 (La. 2/13/15), 159 So.3d 459, this Court affirmed the sentence, finding that the trial court had "dutifully" complied with our instructions in the prior opinion and that the sentence imposed was not constitutionally excessive. Notably, the judge who resentenced Brooks was not the same judge who imposed the original life sentence. However, this Court noted that the resentencing judge expressly adopted the reasons of the initial judge and expressed further reasons in support of his denial of parole.
Whitaker challenges the sentence imposed and Judge Emanuel's compliance with La. C. Cr. P. art. 878.1. He notes that Miller and art. 878.1 require that a sentence of life without parole eligibility for a juvenile offender is to be reserved for the "worst offenders and the worst cases." He maintains that Judge Emanuel expressed no reasons for sentencing when imposing either sentence, and he argues that a sentencing judge should not be able to rest on a blanket statement of what information was reviewed prior to the imposition of sentence. Whitaker further maintains that he is not among the worst offenders and this is not among the worst cases. He exhibited no manifest cruelty, no attempt to commit another crime, or intent to kill either of his victims. No charges resulted from the altercation in Whitaker's backyard, and Whitaker testified that he had no problem with Henderson's sexual orientation.
The State counters that the resentencing hearing satisfied the requirements of Miller and art. 878.1. Testimony was taken, and Whitaker's juvenile and prison records were introduced. Whitaker also had the opportunity to present evidence of any mitigating factors. The State further argues that the court took all of the evidence under advisement and that it considered all relevant motions, procedural matters, argument, testimony and applicable law prior to sentencing. Finally, the State argues that the record supports the imposition of life without parole in this case. Whitaker's extensive juvenile record indicates that he has been arrested numerous times and his education was interrupted by detention on the manslaughter charge. In addition, Whitaker's violent behavior has resulted in the unnecessary deaths of two people before his 18th birthday.
At Whitaker's resentencing, both parties were afforded the opportunity to present evidence of aggravating and mitigating factors. While there was no PSI ordered, the sanity commission reports contained family, social and educational background information. Whitaker's juvenile and prison records were introduced. Whitaker also testified on his own behalf. Finally, Judge Emanuel also presided over Whitaker's jury trial. Thus, the sentencing judge was presented with adequate evidence upon which to base a thorough and considered sentencing decision regarding parole eligibility.
Miller does not require a sentencing court to articulate all mitigating factors on the record. State v. Wilson , 14-1267 (La. App. 4 Cir. 4/29/15), 165 So.3d 1150, writ denied , 2015-1100 (La. 4/15/16), 191 So.3d 1035. Rather, Miller simply "mandates a hearing at which youth-related mitigating factors can be presented to the sentencer and considered in making a *536 determination of whether the life sentence imposed upon a juvenile killer should be with or without parole eligibility." Fletcher , 49,303 at p. 15, 149 So.3d at 943.
Nevertheless, the record does not make clear that Judge Emanuel articulated which aggravating and mitigating factors she considered when resentencing Whitaker to life imprisonment at hard labor without parole. We are therefore unable to divine any reasons or what considerations she took into account. Notably, Judge Emanuel did not express a finding that Whitaker is one of the worst offenders and that this is one of the worst offenses.
The record reflects only the following judicial soliloquy:
Duly noted. This matter comes before this Court today for resentencing after remand from the Second Circuit Court of Appeal. Thus, this judge has reviewed all relevant motions and other procedural matters herein.
Further, this judge has heard the argument of all counsel as well as all testimony made part of the record via the sentencing hearing.
This Court has also reviewed all applicable or applicable law herein and has reviewed the PSI report.
[ADA]: I'm sorry, Your Honor?
PSI. I think that's from a different case.
[ADA]: Yeah, that - -
Okay. Excuse me.
We had a sanity motion and sanity commission. I reviewed those reports.
[ADA]: Yes, Your Honor.
Let me clarify that for the record. I don't want to refer to the wrong thing and not the PSI reports. But those issues came up in connection with these matters.
In considering all of the aforementioned, this judge so sentences Mr. Breonne Whitaker to serve a sentence of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.
No fine, no court costs are assessed.
Further, this Court recommends the defendant to and for any and all special programs to which he may be eligible during his period of incarceration such as employment, education, vocational, or special programs; as well as life skills, any dispute resolution types of special programs, work skills, substance abuse treatment special programs, or any other special programs.
In contrast, the sentencing court in Fletcher , supra , "painstakingly articulated well-considered reasons" before again sentencing that defendant to life imprisonment at hard labor without benefits. None of that occurred in this matter. Furthermore, in Brooks II , supra , the sentencing court "dutifully" did exactly what this Court had requested in its earlier opinion that vacated the life without parole sentence and remanded for resentencing in light of Miller .
CONCLUSION
For the foregoing reasons, we vacate Whitaker's sentence of life imprisonment without parole eligibility and remand to the trial court to conduct a hearing to articulate its reasons for denial of parole eligibility in accordance with Miller v. Alabama and La. C. Cr. P. art. 878.1.
The sentence is VACATED and the matter is REMANDED.