Judgment rendered April 22, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,367-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

BREONNE D. WHITAKER                         Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 318,083

Honorable Ramona L. Emanuel, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Peggy J. Sullivan

BREONNE D. WHITAKER                  Pro Se

JAMES EDWARD STEWART, SR.            Counsel for Appellee
District Attorney

TOMMY JAN JOHNSON
WILLIAM JACOB EDWARDS
Assistant District Attorneys

* * * * *

Before WILLIAMS, STONE, and COX, JJ.

**COX, J.**

This appeal arises from the First Judicial District Court, Caddo Parish, Louisiana. Breonne Whitaker was convicted by a unanimous jury of second-degree murder and was sentenced to life imprisonment, without the benefit of probation, parole, or suspension of sentence. Whitaker appeals his life sentence without benefits. For the following reasons, we affirm Whitaker's sentence.

**FACTS**

Whitaker was convicted of second-degree murder for the shooting death of Frederick Henderson when Whitaker was 17 years old. Henderson was found in a vehicle in Shreveport. Initially, he was thought to be the victim of a single-vehicle accident. Paramedics discovered Henderson had a single gunshot wound to the chest. His shorts were pulled down to his knees. Investigators discovered that Henderson and Whitaker had an altercation about a month prior to Henderson's death. When investigators talked to Whitaker, he told police that he caught Henderson engaging in oral sex with a third man in his backyard. Whitaker told investigators that he fired a gun at Henderson because Henderson had been following him and trying to get him into his car, and he was scared because he was raped when he was younger. Whitaker led law enforcement to a gun and the caliber matched that used to shoot Henderson. *State v. Whitaker*, 52,533 (La. App. 2 Cir. 2/27/19), 266 So. 3d 526 ("*Whitaker II*").

Whitaker later told law enforcement that Henderson drove him to a mall, where Whitaker allowed Henderson to perform oral sex on him in exchange for $50. Whitaker agreed to engage in sexual intercourse with Henderson, but was unable to complete the act. When Whitaker exited the

vehicle, Henderson grabbed his shirt, and Whitaker fired one shot at Henderson and ran away. Whitaker returned to the car after he heard the car crash into a pole but ran away again toward his home. *Id.*

The jury heard testimony from Shreveport Police Department patrol officers, homicide detectives, crime scene investigators, and a DNA analyst. The jury also heard from a childhood friend of Whitaker's who stated that she knew Henderson from a party they had attended and Henderson often dressed as a woman. She testified that she heard Whitaker say that he would "get some money from the faggot." She stated that this occurred about a month prior to the shooting. Henderson's mother testified that he was her only son and was 23 years old when he was murdered. She stated that Henderson helped care for his sister, who has cerebral palsy, as well as an elderly great-aunt. *Id.*

Whitaker was sentenced to life imprisonment without the benefit of probation, parole, or suspension of sentence. Whitaker appealed and, following jurisdiction check, his sentence was vacated and the matter was remanded for a ruling on an outstanding motion for post-verdict judgment of acquittal. *State v. Whitaker*, 51,632 (La. App. 2 Cir. 5/25/17) 225 So. 3d 524 ("*Whitaker I*"). On remand, the trial court denied the motion.

Following a sentencing hearing pursuant to La. C. Cr. P. art. 878, Whitaker was again sentenced to life imprisonment without benefits. Whitaker appealed his sentence and, because the trial court did not provide reasons for Whitaker's life sentence without benefits, the case was remanded for resentencing in compliance with La. C. Cr. P. art. 878.1. *Whitaker II*.

2

On remand, the trial court held a sentencing hearing on September 3, 2019. The State and defense made brief arguments. The trial court then stated the following:

> This court has also reviewed the sentencing guidelines in C. Cr. P. art. 894.1, and has reviewed the evidence adduced at the hearing, another hearing, which was previously held. And based on all of the evidence adduced in court, makes the determination that the appropriate sentence for Mr. Whitaker is one of life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence.
>
> The key reason this court declines to give Mr. Whitaker the benefit of parole is primarily because of his prior manslaughter adjudication before this conviction for – in the instant case of second-degree murder, both offenses being killings of human beings.
>
> The court also looks to the cases that discussed instances in which defendants should be denied parole. And, further, the court finds that Mr. Whitaker seems to have little regard for human life, which is concerning given his youth. Thus, in accordance with applicable law, the court … at this time resentences Mr. Whitaker as follows: to a sentence of life imprisonment without the benefit of parole, probation, or suspension of in the instant case.

The trial court recommended Whitaker to any special programs for which he was eligible and informed him of his appellate and post-conviction relief time limits. The trial court gave Whitaker credit for time served. The trial court then stated the following:

> The court also notes that it will reduce its ruling with additional specificity forthwith. Yesterday was Labor Day … which is a holiday. And I just articulated my reasons orally. My judicial assistant will be out until Thursday. And she will have an opportunity to have my ruling in writing or reduced to written form, to which the court can sign – its reasons for ruling, which was the reason that the reviewing court vacated the prior sentence and remanded for the court to articulate reasons for the denial of the parole eligibility. And counsel and Mr. Whitaker will receive copies of same as soon as the court can file it.

Whitaker filed his motion for appeal on September 16, 2019. His appeal was granted on September 17, 2019. On September 26, 2019,

3

Whitaker filed a "Supplemental Motion to Reconsider and Vacate Excessive Sentence." It does not appear from the record before us that the trial court made a ruling on the motion to reconsider.

On February 21, 2020, the trial court signed a document titled "Trial Court's Brief Written Reasons for Ruling Denying Benefit of Parole." The trial court's written reasons state:

> This court heard the evidence at the sentencing hearing regarding the manslaughter adjudication Mr. Whitaker received as a juvenile. Further, this court heard and saw the evidence adduced at the trial. Inadvertently, the proper post-trial pre-sentence motions were not ruled upon prior to sentencing. So, Mr. Whitaker was resentenced after the motions were properly addressed.
>
> Then this court heard all the evidence adduced at the resentencing hearing.
>
> The court also considered the disciplinary records of Mr. Whitaker.
>
> This court also took into account the impact of the murder on the victim's family. This court also considered the disciplinary records of Mr. Whitaker in his juvenile records and sanity hearing reports as well as any other evidence from any other type of hearings herein.
>
> Additionally, in many of the other cases that have come before this court for review to allow or disallow review for juvenile lifers, this court has generally afforded the defendant's parole so far. In most cases, evidentiary sentencing hearings were not had, nor was there opposition to the gravity of parole eligibility.
>
> However, the criminal history of Mr. Whitaker, which includes a manslaughter adjudication, as well as the nature and manner at which he committed the second-degree murder causes this court to deny parole. It is likely that had there not been an evidentiary sentencing hearing, Mr. Whitaker's criminal history would not have been of record for resentencing.
>
> It would seem that due to Mr. Whitaker's actions, he appears to have a disregard for human life even at his youthful age. This court has determined that maybe he should not have the same sentence as those who do not share the same criminal history, discipline issues, and apparent disregard for human life.

The trial court then stated that it had reviewed the relevant cases and applicable law, and denied Whitaker parole. Whitaker is now appealing his life sentence without benefits.

**DISCUSSION**

In the instant appeal, Whitaker appeals his sentence. He argues the trial court did not comply with the provisions of La. C.Cr.P. art. 878.1. He also argues that the trial court erred in sentencing him to life imprisonment without the benefit of parole, probation, or suspension of sentence.

Whitaker argues the trial court did not provide specificity in the imposition of the sentence to support the finding that this is one of the worst cases, and Whitaker one of the worst offenders. He argues the trial court stated only what information had been reviewed and not how the information provided a basis for the imposition of his life sentence without parole. He argues his sentence is excessive because he was not engaging in criminal activity when he shot Frederick Henderson. He asserts that he is not the worst of offenders, he acted on impulse, and is remorseful for his actions. Whitaker asks that this Court set aside the trial court's sentence and resentence him to life with the possibility of parole.

The State argues that by the age of seventeen Whitaker had killed two people, showing a lack of regard for human life. The State asserts that even after he was incarcerated, he continued his violent tendencies and disobedience to the rules with a large number of fights and violations.[1] The State argues that the fact that the trial judge did not refer to Whitaker as one

---

[1] At Whitaker's resentencing hearing, the State introduced his jail records, which included disciplinary actions for fighting, refusing to comply with orders, and violating rules. There were also numerous instances where an inmate requested to be separated from Whitaker. *Whitaker II.*

5

of the worst offenders or state that his offense was one of the worst offenses is not fatal to Whitaker's sentencing. The State argues La. C. Cr. P. art. 878.1 does not require a trial court to use those specific words. The State also asserts that Whitaker's sentence is not excessive, because of his extensive criminal history. The State asks this Court to affirm Whitaker's sentence of life without parole.

In *Graham v. Florida,* 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), the Supreme Court prohibited life without parole in non-homicide cases, for those under the age of 18 at the time of the crime. In *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), the Supreme Court held that mandatory life without parole violates the Eighth Amendment's prohibition against cruel and unusual punishment, if the murderer was under 18 years old at the time of the crime. *Miller* does not categorically prohibit life without benefit of parole for juveniles, but a sentencing court must first consider an offender's youth and attendant characteristics as mitigating circumstances before determining whether to impose the harshest possible penalty for a juvenile offender. *State v. Brooks*, 49,033 (La. App. 2 Cir. 5/7/14), 139 So. 3d 571, *writ denied*, 14-1194 (La. 2/13/15), 159 So. 3d 459 *("Brooks II")*.

La. C. Cr. P. art. 878.1 states, in part:

> B. (1) If an offender was indicted prior to August 1, 2017, for the crime of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense and a hearing was not held pursuant to this Article prior to August 1, 2017, to determine whether the offender's sentence should be imposed with or without parole eligibility, the district attorney may file a notice of intent to seek a sentence of life imprisonment without the possibility of parole within ninety days of August 1, 2017. If the district attorney timely files the notice of intent, a hearing shall be conducted to determine

whether the sentence shall be imposed with or without parole eligibility.

. . .

C. At the hearing, the prosecution and defense shall be allowed to introduce any aggravating and mitigating evidence that is relevant to the charged offense or the character of the offender, including but not limited to the facts and circumstances of the crime, the criminal history of the offender, the offender's level of family support, social history, and such other factors as the court may deem relevant. The admissibility of expert witness testimony in these matters shall be governed by Chapter 7 of the Code of Evidence.

D. The sole purpose of the hearing is to determine whether the sentence shall be imposed with or without parole eligibility. The court shall state for the record the considerations taken into account and the factual basis for its determination. Sentences imposed without parole eligibility and determinations that an offender is not entitled to parole eligibility should normally be reserved for the worst offenders and the worst cases.

In *State v. Fletcher*, 49,303 (La. App. 2 Cir. 10/1/14), 149 So. 3d 934, *writ denied*, 14-2205 (La. 6/5/15), 171 So. 3d 945, the defendant was 15 years old when he shot both of his parents with a shotgun, killing them instantly. Fletcher's 19-year-old-sister witnessed the murder of their mother. Fletcher threatened to kill her as well and forced her to remain in her bedroom for the remainder of the night. She was able to escape when Fletcher went to school the next day.

This Court applied La. C. Cr. P. art. 878.1 and affirmed Fletcher's life without parole sentences. This Court noted that the sentencing judge in Fletcher was the same judge who presided over the trial and was "intimately familiar" with the case. At the *Miller* hearing, the trial court heard testimony that Fletcher had a history of torturing animals, criminal activity, and violence, and he still expressed a desire to kill his sister. The trial court also heard testimony from a psychiatrist who opined that there was an increased

7

risk of future violent behavior and that Fletcher suffered from antisocial personality disorder or psychopathy. Further, the trial court provided thorough and well-considered reasons for sentencing, outlining the jurisprudence and factors considered. This Court found that the trial court completely fulfilled this Court's directive to conduct a *Miller* hearing, to make a more detailed and comprehensive review of the relevant factors, and to state its reasons for sentencing on the record.

In *State v. Smoot*, 13-453 (La. App. 5 Cir. 1/15/14), 134 So. 3d 1, *writ denied*, 14-0297 (La. 9/12/14), 147 So. 3d 704, the Fifth Circuit found that the trial court had complied with the *Miller* principles at a sentencing hearing that occurred before the enactment of art. 878.1. During the sentencing hearing, the trial court stated that, in accordance with *Miller*, it considered the defendant's youth and previous criminal activity. The trial court also considered that the elderly victim was shot multiple times in the front and back by the juvenile defendant. It was noted that the defendant was involved in the drug trade, had a prior conviction for possession with intent to distribute cocaine, and shot the victim over a stereo. The district court sentenced defendant to life imprisonment without the benefit of parole, probation, or suspension of sentence.

In *State v. Brooks*, 47,394 (La. App. 2 Cir. 12/12/12), 108 So. 3d 161, *writ denied*, 13-0080 (La. 5/31/13), 118 So. 3d 393 (*"Brooks I"*), this Court affirmed the second-degree murder conviction of a juvenile defendant who participated in a "senseless gunfight" which resulted in the death of an innocent bystander. However, this Court vacated the mandatory sentence of life imprisonment at hard labor without benefits and remanded the case to the trial court for resentencing in light of *Miller*. Following a sentencing

hearing conducted pursuant to art. 878.1, the trial court again imposed a sentence of life imprisonment without parole and the defendant again appealed his sentence.

In *Brooks II*, *supra*, this Court affirmed the sentence, finding that the trial court had "dutifully" complied with this Court's instructions in the prior opinion and that the sentence imposed was not constitutionally excessive. Furthermore, the judge who resentenced Brooks was not the same judge who imposed the original life sentence. However, this Court noted that the resentencing judge expressly adopted the reasons of the initial judge and expressed further reasons in support of his denial of parole.

The record before us shows that Whitaker received a thorough *Miller* hearing in which he was allowed to testify, his juvenile and incarceration records were reviewed, a sanity commission report was examined, and the victim's mother testified. The trial court stated that it considered all of that information along with the evidence adduced at trial. The trial court stated that it also considered the impact Henderson's murder has had on his family. The trial court considered the gravity of sentence. It stated that for most of the juveniles before it, under the same circumstances, it had sentenced those defendants to life *with* the possibility of parole.

The trial court found Whitaker's criminal history particularly disturbing, in that he had a prior manslaughter conviction, and that "the nature and manner at which he committed the second-degree murder" of Henderson showed a callous disregard for human life. The trial court stated, "[H]e should not have the same sentence as those who do not share the same criminal history, discipline issues, and apparent disregard for human life."

9

The trial court did not specifically state that Whitaker is one of the worst offenders and that this is one of the worst offenses. However, the *Miller* hearing was thorough and the trial court articulated reasons for resentencing Whitaker to life without parole. We affirm Whitaker's sentence.

## CONCLUSION

For the foregoing reasons, Whitaker's life sentence without the benefit of probation, parole, or suspension of sentence is affirmed.

**AFFIRMED.**